**KERRY STEEL, INC., Plaintiff–Appellant,**

**v.**

**PARAGON INDUSTRIES, INC., Defendant–Appellee.**

No. 95–1334.

United States Court of Appeals, Sixth Circuit.

Argued May 10, 1996.

Decided Feb. 7, 1997.

Steven Z. Cohen, Kenneth Lee Rosen (argued and briefed), Bloomfield Hills, MI, for plaintiff–appellant.

Christopher G. Manolis (argued and briefed), Daniel C. Symonds, Blake, Kirchner, Symonds, MacFarlane, Larson & Smith, Detroit, MI, for defendant–appellee.

Before: MARTIN, Chief Judge; JONES and NELSON, Circuit Judges.

DAVID A. NELSON, Circuit Judge.

This is an appeal from the dismissal of a contract action for lack of *in personam* jurisdiction.

The plaintiff, a Michigan steel service center, approached the defendant, an Oklahoma pipe fabricator, with an offer to sell it approximately $300,000 worth of steel coils. The defendant accepted the offer by telephone, following negotiations conducted via telephone and facsimile machine. Purchase orders for the coils were sent to the plaintiff in Michigan. After taking possession of the goods at a warehouse in Illinois, the defendant refused to pay the full purchase price because of alleged nonconformity with agreed quality standards.

The plaintiff brought suit in a Michigan court for money claimed to be due and owing. After removing the action to federal court on diversity grounds, the defendant, a corporation not qualified to do business in Michigan, moved to dismiss under Rule 12(b)(2), Fed. R.Civ.P. The district court (Duggan, J.) granted the motion, concluding that the plaintiff had failed to make a *prima facie* showing that the court had jurisdiction over the defendant's person. A motion for reconsideration was subsequently denied.

The plaintiff argues on appeal that it did make a *prima facie* showing of jurisdiction and that the court erred in considering controverted facts, in failing to give proper effect to the defendant's admissions, and in failing to require additional discovery or an evidentiary hearing. We disagree. The district court proceeded properly, in our view, and reached the only conclusion permissible on the record presented. The order granting the motion to dismiss for lack of *in personam* jurisdiction will be affirmed.

I

A federal court sitting in diversity may exercise personal jurisdiction over an out-of-state defendant only to the extent that a court of the forum state could do so. *CompuServe, Inc. v. Patterson,* 89 F.3d 1257,

1262 (6th Cir.1996). "[T]he defendant must be amenable to suit under the forum state's long-arm statute and the due process requirements of the Constitution must be met." *Id.,* quoting *Reynolds v. International Amateur Athletic Fed'n,* 23 F.3d 1110, 1115 (6th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 423, 130 L.Ed.2d 338 (1994).

Personal jurisdiction comes in two flavors: "general" jurisdiction, which depends on a showing that the defendant has continuous and systematic contacts with the forum state sufficient to justify the state's exercise of judicial power with respect to any and all claims the plaintiff may have against the defendant, and "specific" jurisdiction, which exposes the defendant to suit in the forum state only on claims that "arise out of or relate to" a defendant's contacts with the forum. *Helicopteros Nacionales de Colombia S.A., v. Hall,* 466 U.S. 408, 414–415 & nn. 8–10, 104 S.Ct. 1868, 1872 & nn. 8–10, 80 L.Ed.2d 404 (1984); *Third Nat'l Bank in Nashville v. WEDGE Group, Inc.,* 882 F.2d 1087, 1089 (6th Cir.1989), *cert. denied,* 493 U.S. 1058, 110 S.Ct. 870, 107 L.Ed.2d 953 (1990). The appeal in the case at bar turns primarily on the question whether the plaintiff made a showing of specific jurisdiction over the person of the defendant.

■ The district court did not conduct an evidentiary hearing, granting the motion to dismiss on the basis of the parties' pleadings and affidavits and the briefs and oral arguments of counsel. To avoid dismissal where there has been no evidentiary hearing, a plaintiff need only present a *prima facie* case for jurisdiction. *Theunissen v. Matthews,* 935 F.2d 1454, 1458 (6th Cir.1991); see also *CompuServe,* 89 F.3d at 1262. "Dismissal in this procedural posture is proper only if *all* the specific facts which the plaintiff ... alleges collectively fail to state a *prima facie* case for jurisdiction." *Id.* (emphasis added). We thus turn to the plaintiff's complaint and affidavits to determine whether a *prima facie* case was presented here.

An affidavit executed by the president of plaintiff Kerry Steel, Inc., explained that Kerry Steel customarily contacts prospective purchasers by telephone and that negotiations often occur by telephone and fax. This affidavit did not refer specifically to the transaction with the defendant, Paragon Industries, Inc.

Gerald Gallant, vice president of finance for Kerry Steel, attested that Paragon made partial payments to Kerry Steel totaling about $108,000; that "some of [the payments] were sent to Kerry Steel's post office box in Illinois and some directly to Kerry Steel at its offices in Southfield[, Michigan]"; that after Paragon failed to pay the full purchase price, negotiations with Paragon "took place by telephone and facsimile transmission;" that many of these communications were initiated by Paragon; and that Paragon had previously purchased steel products from Advance Steel Company in Detroit, a company that had extended a $100,000 line of credit to Paragon.

Edward Potts, a Kerry Steel salesperson, related in his affidavit that an independent sales representative acting on behalf of Kerry Steel initially contacted Paragon in regard to a possible sale of steel products early in 1994; that negotiations by telephone and fax ensued, with some of the communications being initiated by Paragon; that Paragon "mailed and/or faxed purchase orders" to Kerry in Michigan; and that Kerry, pursuant to Paragon's request, "directed" that the coils purchased by Paragon be shipped to a public warehouse in Illinois.

The affidavits went into substantially more detail than the complaint, and we find nothing in the complaint that calls for discussion here.

## II

At the time of the adoption of the Fourteenth Amendment, it was widely understood that the nature of our federal system implied significant limits on the authority of state courts to exercise jurisdiction over out-of-state defendants. If the judicial power of a state were to be invoked against a foreign defendant, it was believed, the defendant had to appear before the court voluntarily or had to be present in the forum state so as to be amenable to service of process there. *Burnham v. Superior Court of California,* 495 U.S. 604, 616, 110 S.Ct. 2105, 2113, 109

L.Ed.2d 631 (1990). Nineteenth Century courts understood the Fourteenth Amendment as "embod[ying]" these ideas. *Id.*; see *Pennoyer v. Neff*, 95 U.S. 714, 732, 24 L.Ed. 565 (1878).

In succeeding years, the requirement of consent or presence was eroded in a line of decisions that culminated in the landmark case of *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). *Burnham*, 495 U.S. at 616–618, 110 S.Ct. at 2113–2115. *International Shoe* explicitly replaced the traditional requirement of consent or presence with a requirement that the defendant "have certain minimum contacts" with the forum state, such that the exercise of personal jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'" 326 U.S. at 316, 66 S.Ct. at 158.

The requirement of such contacts, we are told, serves two important purposes: "It protects the defendant against the burdens of litigating in a distant or inconvenient forum," *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980), and it protects the defendant against attempts by states to "reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system." *Id.*; see also *Insurance Corp. of Ireland, Ltd., v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 n. 10, 102 S.Ct. 2099, 2104 n. 10, 72 L.Ed.2d 492 (1982).

In 1968 our court surveyed the caselaw on the "contacts" doctrine and identified three prerequisites for the exercise of personal jurisdiction:

> "First, the defendant must purposely avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Southern Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir.1968).

Although not the last word on personal jurisdiction, the *Mohasco* test continues to provide a useful starting point for analyzing jurisdictional questions of the sort presented here. See, *e.g.*, *CompuServe*, 89 F.3d at 1263; *LAK, Inc. v. Deer Creek Enter.*, 885 F.2d 1293, 1300 (6th Cir.1989), *cert. denied*, 494 U.S. 1056, 110 S.Ct. 1525, 108 L.Ed.2d 764 (1990).

### A

■ The *Mohasco* court called purposeful availment the "*sine qua non* for *in personam* jurisdiction." 401 F.2d at 381–82. Subsequent Supreme Court decisions have reinforced the centrality of this factor. To be subject to *in personam* jurisdiction, the Supreme Court has said in a formulation somewhat more precise than that used in *Mohasco*, a defendant must "purposefully avail[ ] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183–84, 85 L.Ed.2d 528 (1985), quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958). In a sense, it may be said, the purposeful availment requirement is the contemporary analogue of the older concept of jurisdiction based on consent.

As the Supreme Court explained in *World–Wide Volkswagen*, 444 U.S. at 297, 100 S.Ct. at 567, the purposeful availment requirement "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." A defendant that has purposefully availed itself of the protection of the forum state "has clear notice that it is subject to suit there, and can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to consumers, or, if the risks are too great, severing its connection with the State." *Id.* The requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous' or 'attenuated' contacts." *Burger King*, 471 U.S. at 475, 105 S.Ct. at 2183.

On the facts presented here, we think it clear. that the plaintiff has not made a *prima facie* showing that the defendant purposefully availed itself of the benefits and protection of Michigan's law. Paragon has no employees or offices in Michigan, and there has been no showing that any Paragon employee has ever been in Michigan for the purpose of conducting business there. It was Kerry Steel that initially contacted Paragon in Oklahoma—and Paragon responded without leaving home, as it were. The Supreme Court has "emphasized that parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." *Burger King*, 471 U.S. at 473, 105 S.Ct. at 2182, quoting *Travelers Health Ass'n v. Virginia*, 339 U.S. 643, 647, 70 S.Ct. 927, 929, 94 L.Ed. 1154 (1950). Kerry Steel may or may not have reached out to Oklahoma, but in no way has it been shown that Paragon reached out to Michigan.

The mere fact that Paragon entered into a contract with a Michigan corporation does not mean that Paragon purposefully availed itself of the "benefits and protections" of Michigan law. As the Court explained in *Burger King*, 471 U.S. at 478, 105 S.Ct. at 2185, "an individual's contract with an out-of-state .party alone" cannot "automatically establish minimum contacts." See also *CompuServe*, 89 F.3d at 1265 ("merely entering into a contract ... would not, without more, establish sufficient minimum contacts").

It is immaterial that Paragon placed telephone calls and sent faxes to Kerry Steel in Michigan. To borrow language employed by this court in *LAK*, 885 F.2d at 1301, "[t]he telephone calls and letters on which the plaintiff's claim of jurisdiction primarily depends strike us as precisely the sort of 'random,' 'fortuitous' and 'attenuated' contacts that the *Burger King* Court rejected as a basis for haling non-resident defendants into foreign jurisdictions." *Id.* at 1300. See also *Scullin Steel Co. v. National Ry. Utilization Corp.*, 676 F.2d 309, 314 (8th Cir.1982) ("The use of interstate facilities (telephone, the mail), the making of payments in the forum state, and the provision for delivery within the forum state are secondary or ancillary factors and cannot. alone provide the 'minimum contacts' required by due process").

Not only was there no "reaching out" by Paragon to the Michigan plaintiff, we have been given no reason to believe that Paragon intended to· establish "continuing relationships and obligations" in Michigan. *Burger King*, 471 U.S. at 473, 105 S.Ct. at 2182–83. This is not a case like *Lanier v. American Bd. of Endodontics*, 843 F.2d 901, 911 (6th Cir.), *cert. denied*, 488 U.S. 926, 109 S.Ct. 310, 102 L.Ed.2d 329 (1988), where the court upheld Michigan's exercise of jurisdiction over an out-of-state defendant on the ground that the "object of the [defendant's] contacts with Michigan [was] to have ongoing, far-reaching consequences in the Michigan dental services market." The purchase agreement between Paragon and Kerry Steel represents nothing more than an isolated transaction, as far as the record discloses. There is no indication in the record that Paragon intended to create an ongoing relationship in Michigan with Kerry Steel.

We note also that Kerry Steel has alleged no facts connecting either the subject matter of the contract or its performance to the State of Michigan. The *Mohasco* court found it significant that the defendant's activities had "a realistic impact on the commerce of that state." 401 F.2d at 382. No such impact existed in the case at bar. Paragon took possession of the steel coils in Illinois, title passed there, and Kerry Steel does not even assert that the coils were ever located in Michigan. Kerry Steel's Michigan bank account did suffer, to be sure, "but the locus of such a monetary injury is immaterial, as long as the obligation did not arise from 'a privilege the defendant exercised in [the forum state].'" *LAK*, 885 F.2d at 1303, quoting *Hanson*, 357 U.S. at 252, 78 S.Ct. at 1239.

The similarities between this case and *LAK* are substantial. There a Michigan corporation sought out an Indiana partnership for the purpose of purchasing a single parcel of land in Florida. As in the case at bar, there was no indication of anything other than a "one-shot" transaction, and it was the plaintiff who had initially solicited the defen-

dant. About the only meaningful contacts the *LAK* defendant had with the State of Michigan were letters, telephone calls, and three draft contracts that were sent to Michigan, plus a personal visit by representatives of the defendant who came to Michigan to sign the contract. We held in *LAK* that these contacts were not sufficient to subject the defendant to suit in Michigan —and *LAK* clearly teaches that the Michigan contacts of the defendant in the present case cannot subject this defendant to suit in Michigan either.

What the case at bar comes down to, as we see it, is that Paragon, in response to an unsolicited sales call, ordered products from a Michigan seller and negotiated with the seller via fax and telephone to finalize the transaction. This does not constitute a purposeful availment of the privilege of transacting business in Michigan, so as to invoke the benefits and protections of Michigan law. To hold otherwise would be to offend against the "traditional notions of fair play and substantial justice" of which the Supreme Court spoke in *International Shoe.*

### B

In light of our conclusion that the plaintiff has not shown that the defendant purposefully availed itself of the benefits of Michigan law, we comment only briefly upon the remaining *Mohasco* factors.

■ We are not persuaded that Kerry Steel has shown that its cause of action "ar[o]se from the defendant's activities" in Michigan. At its most basic level, the claim arose out of Paragon's failure to pay the full purchase price, based on the purported nonconformity of the goods with the specifications of the contract. The refusal to pay occurred in Oklahoma.

■ It is true that the second *Mohasco* factor "requires only 'that the cause of action, of whatever type, have a substantial connection with the defendant's in-state activities.'" See *WEDGE,* 882 F.2d at 1091, quoting *Mohasco,* 401 F.2d at 384 n. 27. But the mere fact that the transaction involved a Michigan party is obviously not sufficient.

In regard to the reasonableness element of the *Mohasco* test, finally, it follows from what has already been said that to subject an Oklahoma defendant to suit in Michigan simply because the defendant placed an order with a Michigan seller would be far from reasonable. It is inconceivable to us that the Court which decided *International Shoe* would consider it reasonable for a Michigan court to exercise jurisdiction over defendant Paragon on the facts of this case.

### C

■ Our view of the case is not altered by Kerry Steel's assertion that Paragon also purchased goods from Advance Steel Company, another Michigan corporation. Kerry Steel's cause of action obviously does not "arise out of or relate to" the Advance Steel "contact," and Paragon's dealings with Advance are thus not relevant to the issue of specific jurisdiction over Paragon's person. See *Helicopteros,* 466 U.S. at 414 & n. 9, 104 S.Ct. at 1872 & n. 9. The assertion would be relevant to the question of general jurisdiction, but Kerry has not come close to demonstrating that such jurisdiction could be exercised here. That Paragon might have bought steel from two different suppliers in Michigan hardly shows that a "continuous and systematic part of its general business" was conducted within Michigan. See Mich. Comp.Laws § 600.711(3). Nor would purchases from two Michigan suppliers satisfy the requirements of the Due Process Clause. See *WEDGE,* 882 F.2d at 1089.

### III

■ Citing *Theunissen,* 935 F.2d 1454, the plaintiff argues that the district court erred in relying on the following representations made by the defendant in its pleadings and affidavits: first, that the "[d]efendant is an Oklahoma corporation with its [principal place of business] in Sapulpa, Oklahoma [and] it is not authorized to do business in Michigan, owns no real or tangible property in Michigan and does not contract to render services in or to furnish materials to Michigan;" and second, that "[t]he materials shipped were not necessarily ever physically located in Michigan." The plaintiff's brief on

appeal calls these representations "controverted"—but they were not controverted below.

*Theunissen* involved a situation where the plaintiff had set forth facts which might have established the requisite minimum contacts, and the district court had relied upon affidavits submitted by the defendant to negate these contacts. *Id.* at 1459. In the case at bar, by contrast, the defendant's representations were in no way inconsistent with the facts set forth by the plaintiff.

In deciding a motion to dismiss for want of personal jurisdiction the court must, of course, view the affidavits, pleadings, and documentary evidence in the light most favorable to the plaintiff. But *Theunissen* does not require a court to ignore undisputed factual representations of the defendant which are consistent with the representations of the plaintiff. See *Market/Media Research, Inc. v. Union Tribune Pub. Co.,* 951 F.2d 102, 104 (6th Cir.) (stating only that in determining whether a plaintiff has made a *prima facie* showing of jurisdiction "the court is required to 'consider the pleadings and affidavits in the light most favorable to the plaintiff'"), *cert. denied,* 506 U.S. 824, 113 S.Ct. 79, 121 L.Ed.2d 43 (1992). As we noted in disposing of an appeal from a judgment of dismissal rendered after the remand in *Theunissen,* "[w]e remanded ... because Theunissen's affidavits made out a *prima facie* showing of proper long arm jurisdiction ..., and Matthews' affidavits alone did not suffice to rebut this showing." *Theunissen v. Matthews,* No. 92–1271, 1993 WL 100060, at *2 (6th Cir. Apr.5, 1993).

Consider the items now claimed to be "controverted" here. Paragon's principal place of business, state of incorporation, and ownership or non-ownership of property in Michigan are facts ascertainable from public records. Paragon's sworn statements as to

these matters could easily have been refuted by the plaintiff were they not true. No such refutation was attempted. And because the plaintiff had the burden of proof, it seems to us that in the absence of any evidence to the contrary the district court was fully justified in accepting the representation that the steel coils "were not necessarily ever physically located in Michigan." If the district court did err in this respect, moreover, the error was clearly harmless.

## IV

■ After the filing of Paragon's motion to dismiss, Kerry Steel served a request for admissions.[1] Paragon did not file a timely response. Under Rule 36(b), Fed.R.Civ.P., a request for admissions which is not responded to within the applicable time period "is conclusively established unless the court on motion permits withdrawal or amendment of the admission."

The request asked the defendant to admit, among other things, that "[d]efendant has continuous and systematic business contacts with Kerry Steel, Inc. during the course of the parties' business relationship." Although Paragon did not file a written motion to withdraw this admission under Rule 36(b), the court found that statements made by defense counsel at oral argument were equivalent to a motion to withdraw or amend—and on this basis the court deemed the admission withdrawn.[2] The plaintiff argues that the court could not do so without a properly filed motion under Rule 36(b), and that the defendant did not make the sort of showing necessary to withdraw an admission in any event.

We are not persuaded that the district court was barred from deeming the admission withdrawn. It is true that in *American Auto. Ass'n v. AAA Legal Clinic of Jefferson Crooke, P.C.,* 930 F.2d 1117, 1119 (5th Cir. 1991), the Court of Appeals for the Fifth

1. Paragon argues that the request was served before a discovery conference was held, and without leave of the court, thus violating Rule 36(a), Fed.R.Civ.P. But Paragon did not raise this issue in the lower court, and we decline to address it now.

2. The plaintiff contends that the district court failed to consider two other admissions not discussed in the court's opinion: that the contracts between Kerry Steel and Paragon were performed at least in part in Michigan, and that the defendant transacted business with Kerry Steel in Michigan. As the district court explained in its motion denying reconsideration, however, it accepted these facts as true.

Circuit reversed a decision in which a trial court *sua sponte* deemed an admission withdrawn. But in that case the court did not deem the admission withdrawn until after the completion of a trial, and the court acted entirely on its own. In the case at bar, by contrast, although the defendant did not file a formal motion to withdraw, the defendant's attorney did argue at the hearing on the motion to dismiss that the plaintiff's requests for admission should not be deemed admitted. The federal rules allow oral motions at hearings, see Rule 7(b)(1), Fed.R.Civ.P., and we are reluctant to assign talismanic significance to the attorney's failure to use the phrase "I move."

■ If no formal motion was necessary here, it does not seem to us that the district abused its discretion in deeming the admission withdrawn. A "district court has considerable discretion over whether to permit withdrawal or amendment of admissions." *American Auto.*, 930 F.2d at 1119. The court's discretion must be exercised in light of Rule 36(b), which permits withdrawal (1) "when the presentation of the merits of the action will be subserved thereby," and (2) "when the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits." Here there can be no doubt that the presentation of the merits of the jurisdictional issue was served by allowing the withdrawal of the admission. In regard to prejudice, "[t]he prejudice contemplated by [Rule 36(b)] is not simply that the party who initially obtained the admission will now have to convince the fact finder of its truth." *Brook Village North Assoc. v. General Elec. Co.*, 686 F.2d 66, 70 (1st Cir.1982). Prejudice under Rule 36(b), rather, "relates to special difficulties a party may face caused by a sudden need to obtain evidence upon withdrawal or amendment of an admission." *American Auto.*, 930 F.2d at 1120. Kerry Steel has not shown prejudice of the sort required by the rule.

■ And here again, we believe, if any error did occur, it was harmless. To say that Paragon "has continuous and systematic business contacts with Kerry Steel, Inc. during the course of the parties' business relationship" is to suggest only that the parties had an ongoing relationship during the course of the single transaction in which they engaged—a fact already before the court. It tells us nothing about the length or scope of the relationship, and it does not tell us what contacts there were with the forum state. In denying the motion for reconsideration the district court said that even if it had considered this admission, dismissal would still have been proper. We agree.

## V

■ The plaintiff argues that the district court abused its discretion by failing to grant additional discovery or an evidentiary hearing. A district court, however, is not required "to hold an evidentiary hearing when ... a plaintiff's pleadings and affidavits are insufficient to make a *prima facie* showing of facts supporting the court's assertion of *in personam* jurisdiction." *Market/Media*, 951 F.2d at 106. That proposition has particular force here, where prior to the issuance of the order granting the dismissal the plaintiff neither moved for an evidentiary hearing nor requested that the court delay its ruling to allow additional discovery.

*Commodities Export Co. v. U.S. Customs Serv.*, 888 F.2d 431 (6th Cir.1989), upon which the plaintiff relies, is not to the contrary. There the court held that "a motion to dismiss under Fed.R.Civ.P. 12(b)—and in particular a motion citing a jurisdictional defect under Fed.R.Civ.P. 12(b)(1)—requires a preliminary hearing or hearing at trial to determine any disputed facts upon which the motion or the opposition to it is predicated." *Id.* at 436. In the case at bar, however, the court assumed all of the plaintiff's factual allegations to be true. Because there were no facts in dispute, there was no need for an evidentiary hearing.

**AFFIRMED.**