NORCOLD, INC., Plaintiff,

v.

GREG LUND PRODUCTS LTD., Defendant.

No. C–3–99–442.

United States District Court, S.D. Ohio, Western Division.

April 25, 2000.

Charles H. Brown, III, Dinsmore & Shohl, Cincinnati, OH, James Wynne, Detroit, MI, Rosalie B. Harrison, Butzel Long PC, Detroit, MI, for Plaintiff.

Todd Swatsler, Brian Selden, Jones Day Reavis & Pogue, Columbus, OH, for Defendant.

## DECISION AND ENTRY OVERRULING DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND FORUM NON CONVENIENS (DOC. # 4)

RICE, Chief Judge.

This litigation arises out of the termination of a long-term business relationship between Norcold, Inc. ("Norcold"), a Delaware corporation with its principal place of business in Sidney, Ohio,[1] and Greg Lund Products, Limited, ("Lund"), a Canadian corporation with its principal place of business in Oakville, Ontario. Norcold is a leading United States manufacturer of recreational vehicle gas and electric refrigeration units. Since the 1970's, Lund has been the distributor of Norcold refrigerators in Canada. By letter dated March 8, 1999, Lund was informed that the distribution arrangement between the parties would be terminated, effective July 1, 1999. According to Norcold, since the time that Defendant was informed that it would no longer distribute Norcold prod-

---

1. Since its inception, Norcold has undergone a number of corporate changes. Norcold began in 1959 as a closely held business. In 1964, it was purchased by Stolle Corporation, a majority of which was owned by Alcoa. After Alcoa acquired the balance of Stolle Corporation in 1973, Norcold continued as a division of Stolle. In 1996, Alcoa formed Norcold, Inc., from the assets of the Stolle division. In February of 1997, Thetford Corporation purchased the stock of Norcold, Inc., and since that time, Norcold has operated as a fully independent corporate subsidiary of Thetford. (Riethman Decl. ¶¶ 2–3)

ucts, Lund has failed to pay for merchandise that it had ordered in the past and for products subsequently ordered and sold. The balance due on Norcold's statement of account for Lund is $566,958.00 (Doc. #1). Norcold initiated this litigation on August 10, 1999, seeking a judgment for the account stated.[2]

Pending before the Court is Lund's Motion to Dismiss for lack of personal jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(2), and under the doctrine of *forum non conveniens* (Doc. #4). As discussed below, this Court concludes that it may exercise personal jurisdiction over Defendant, and that *forum non conveniens* does not warrant dismissal of this action. Accordingly, for the reasons assigned, Defendant's Motion to Dismiss for Lack of Personal Jurisdiction or Forum Non Conveniens (Doc. #4) is OVERRULED.

## I. *Motion to Dismiss for Lack of Personal Jurisdiction (Doc. #4)*

In its Motion, Lund contends that this Court lacks personal jurisdiction over it, because it is a foreign defendant and the exercise of such jurisdiction would violate due process. In support of its argument, the company asserts that it lacks any significant contacts with Ohio. According to Kris L. Oakes ("Oakes"), the Chief Executive Officer of GL Products, a division of Lund, Lund is the primary Canadian distributor of heating and refrigeration/freezer units for recreational vehicles, manufactured housing, portable buildings and the communications industry, and has been the exclusive distributor in Canada of Norcold refrigerator/freezer units for over thirty years (Oakes Decl. ¶2). Lund does not advertise or operate its business in the United States and derives no revenue from this country (*id.*). Lund has approximately twenty employees, all of whom reside in Canada. Oakes further states:

> Greg Lund does not own, possess, use or have any interest in real property in the State of Ohio. Greg Lund has no office and no employees in Ohio. Greg Lund has no mailing address in Ohio, is not registered to do business in Ohio, pays no taxes in Ohio, and holds no license of any kind from Ohio. Greg Lund has never solicited business in Ohio, never contracted to provide services in Ohio, and never provided services in Ohio. Greg Lund derives no revenue from business operations in Ohio.

(*Id.* ¶4). With regard to its relationship with Norcold, Oakes states that the agreements between Lund and Norcold were negotiated with Norcold's corporate parent, the Thetford Corporation ("Thetford"), located in Ann Arbor, Michigan, and that Thetford operates all of the sales and distribution aspects of the Norcold business out of its Michigan offices (*id.* ¶5). No Lund employees have entered Ohio for the purpose of negotiating an agreement with Thetford or Norcold (*id.* ¶6). Defendant receives all of its promotional literature and advertising literature from Thetford's offices in Ann Arbor (*id.* ¶7). Lund's contacts with Norcold's manufacturing facility in Ohio have solely consisted of placing orders by facsimile once per month, sending payment to Sidney by mail once per month, and contracting with a private shipping company to pick up Norcold's products when they are available (*id.* ¶8). Based upon these assertions, Lund contends that the Court may not exercise personal jurisdiction over it.

When considering a motion to dismiss for lack of *in personam* jurisdiction prior to trial, the court can determine the motion on the basis of affidavits alone or by conducting an evidentiary hearing. *Serras v. First Tennessee Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir.1989). Furthermore, the court may permit discovery to aid it in deciding the motion, whether based on affidavits, *International Techs. Consult., Inc. v. Euroglas*, 107 F.3d 386

---

**2.** Plaintiff brought this litigation in the Shelby County Court of Common Pleas. Defendant removed the action to this Court on September 9, 1999 (Doc. #1).

(6th Cir.1997) (plaintiff was ordered to respond to motion challenging personal jurisdiction after completion of discovery on jurisdictional issues; no evidentiary hearing held), or by conducting an evidentiary hearing, *Serras,* 875 F.2d at 1214 (court may "order discovery of a scope broad enough to prepare the parties for [the evidentiary] hearing"). The court has discretion to select which method to follow, and will only be reversed for abuse of that discretion. *Michigan Nat'l Bank v. Quality Dinette, Inc.,* 888 F.2d 462, 466 (6th Cir.1989); *Serras,* 875 F.2d at 1214.

If the court determines that the motion can be decided without a hearing, it "must consider the pleadings and affidavits in the light most favorable to the plaintiff." *Welsh v. Gibbs,* 631 F.2d 436, 439 (6th Cir.1980), *cert. denied,* 450 U.S. 981, 101 S.Ct. 1517, 67 L.Ed.2d 816 (1981). The plaintiff, however, bears the "relatively slight" burden of establishing a *prima facie* case of personal jurisdiction. *American Greetings Corp. v. Cohn,* 839 F.2d 1164, 1168–69 (6th Cir.1988). If the plaintiff demonstrates the existence of a *prima facie* case of personal jurisdiction over the defendant, after reading the pleadings and the affidavit(s) so construed, the defendant's motion will be denied, notwithstanding contrary allegations made by the defendant. *Serras,* 875 F.2d at 1214.[3]

In the present case, Norcold has provided the Court with affidavits and other materials to support its argument that the exercise of personal jurisdiction over Lund is proper. In the exercise of its discretion, the Court has chosen to resolve the jurisdictional issue on the basis of the pleadings, affidavits, and other evidence before it. Consequently, the Court will construe the parties' evidence in a light most favor-

able to Norcold (the party against whom the motion is directed) and against Lund. With the foregoing guidelines in mind, the Court turns now to its analysis of the *in personam* jurisdiction issue.

In deciding whether this Court may exercise personal jurisdiction over Lund, the Court must look to the law of the forum state. *E.g., Southern Mach. Co. v. Mohasco Indus., Inc.,* 401 F.2d 374, 376 n. 2 (6th Cir.1968). If the forum state's long-arm statute reaches the defendant, the court must then decide whether the defendant's due process rights would be infringed by the exercise of jurisdiction over him. *E.g., Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.,* 91 F.3d 790, 793 (6th Cir.1996).

The Ohio Long–Arm Statute, Ohio Rev. Code Ann. § 2307.382, provides in pertinent part:

(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

(1) Transacting any business in this state; . . . .

(C) When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him.

The Ohio Supreme Court has stated that Ohio Rev.Code Ann. § 2307.382 does not extend personal jurisdiction to the extent permitted under the Due Process Clause of the Fifth and Fourteenth Amendments. *See Goldstein v. Christiansen,* 70 Ohio St.3d 232, 238 n. 1, 638 N.E.2d 541, 545 (1994). The Sixth Circuit, however, has concluded that where Ohio is the forum state, personal jurisdiction exists as long as it comports with due process.[4] *E.g.,*

---

**3.** It is axiomatic that the use of materials outside the pleadings, in ruling on a motion to dismiss for alleged lack of in personam jurisdiction, is permissible and does not convert the motion into one directed to the merits of the litigation.

**4.** Since *Goldstein,* the Sixth Circuit has had numerous opportunities to amend its viewpoint regarding the scope of Ohio's long-arm statute. *E.g., Nationwide,* 91 F.3d 790. Although it has recognized *Goldstein,* the Sixth Circuit has not explicitly adopted it. *See Cole,* 133 F.3d 433 ("Although the Ohio Supreme Court recently held [Ohio Rev.Code Ann.

*Nationwide,* 91 F.3d at 794 (Ohio long-arm statute's reach "extends to the constitutional limits of Due Process Clause"); *CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1262 (6th Cir.1996); *Cole v. Mileti,* 133 F.3d 433 (6th Cir.1998). Consequently, the Sixth Circuit has merged the long-arm statute analysis with the due process analysis. *See Nationwide,* 91 F.3d at 793. In other words, the Sixth Circuit has held that because Ohio's long-arm statute is conterminous with due process, compliance with due process satisfies the long-arm statute (and vice versa).

■ The Sixth Circuit has established a three-part test for determining whether a court can exercise specific personal jurisdiction over a nonresident defendant.[5] *Southern Machine Co.,* 401 F.2d at 381; *Nationwide,* 91 F.3d at 794. *First,* "the defendant must purposefully avail himself of the privilege of conducting activities within the forum state;" *second,* "the cause of action must arise from the defendant's activities there;" and *third,* the acts by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant fundamentally fair. *Southern Machine Co.,* 401 F.2d at 381.

§ 2307.382(A)(1)] does not reach to the limits of the Due Process Clause, ... our central inquiry is whether [defendant] established certain minimum business contacts with Ohio so that the ... exercise of personal jurisdiction over him did not offend 'traditional notions of fair play and substantial justice.' "). *But see Vorhis v. American Med. Sys., Inc.,* No. 96–3525, 124 F.3d 201, 1997 WL 476527 (6th Cir. Aug. 19, 1997).

However, even if this Court were to resolve the instant Motion under the narrower Ohio Supreme Court approach (requiring this Court to determine the applicability of the Ohio long-arm statute and then, if applicable, to separately determine whether the exercise of *in personam* jurisdiction would satisfy due process), the result would not differ. The Ohio Supreme Court has interpreted "transact" broadly, saying *"it is a broader term than the word 'contract' and may involve business negotiations which have been either wholly or partly brought to a conclusion." Kentucky Oaks Mall v. Mitchell's Formal*

### 1. *Purposeful Availment*

■ *First,* for this Court to exercise personal jurisdiction over Lund, the Court must find that Defendant purposefully availed itself of the privilege of conducting activities within the forum state, namely Ohio. The "purposeful availment" requirement ensures that defendants are not subjected to jurisdiction based solely upon random or attenuated contacts, or the unilateral activity of another party. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). "Jurisdiction is proper under the purposeful availment requirement where 'the contacts proximately result from actions by the defendant himself that create a substantial connection with the forum state.'" *Reynolds v. International Amateur Athletic Fed'n,* 23 F.3d 1110, 1116 (6th Cir.), *cert. denied,* 513 U.S. 962, 115 S.Ct. 423, 130 L.Ed.2d 338 (1994)(quoting *Burger King,* 471 U.S. at 475, 105 S.Ct. 2174). The mere fact that a defendant entered into a contract with the plaintiff in the forum state does not constitute purposeful availment. *Kerry Steel, Inc. v. Paragon Indus., Inc.,* 106 F.3d 147 (6th Cir.1997). "[T]he defendant's conduct and connection with the forum must be of a character that he or she 'should reasonably anticipate ·

*Wear, Inc.,* 53 Ohio St.3d 73, 75, 559 N.E.2d 477, 480 (1990)(quoting Black's Law Dictionary 1341 (5th ed.1979)(emphasis omitted)), *cert. denied,* 499 U.S. 975, 111 S.Ct. 1619, 113 L.Ed.2d 717 (1991). For more than thirty (30) years, Lund placed orders with Norcold in Ohio and arranged for the shipment of Norcold products to Canada. Such conduct falls within "transact" as defined by Ohio case law. Therefore, even if the Sixth Circuit had adopted *Goldstein,* Ohio's long-arm statute would reach Lund.

**5.** Defendant states that federal courts recognize both general and specific personal jurisdiction, and it argues that this Court lacks general personal jurisdiction over it. Ohio's long-arm statute precludes general personal jurisdiction in this forum. *Smith v. Turfway Park,* Case No. 3:97–145, Doc. # 13 (Mar. 13, 1998)(Rice, J.). Accordingly, the Court need not address that issue.

being haled into court there.'" *Id.* (*quoting World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)).

■ Lund argues that this Court cannot exercise jurisdiction over it merely because Norcold's manufacturing facility happens to be located in Ohio. It argues that· Plaintiff's decisionmaking authority rests exclusively in Michigan, not Ohio, and that Lund negotiated its distribution agreement in Canada with Thetford employees in Michigan. Thus, Defendant argues that its "infrequent faxes to Ohio cannot constitute 'purposeful availment.'"

In its memorandum, Plaintiff takes issue with a number of Defendant's factual predicates. Norcold asserts that its relationship with Lund was not characterized by sporadic, infrequent facsimiles to Ohio. Rather, it argues that the contact between them was frequent and regular, consisting of meetings, telephone calls, letters and facsimiles, often emanating from Ohio, over a thirty year period. According to Ronald Riethman ("Riethman"), current President of Norcold and its former Vice President and General Manager, during the parties' entire relationship, Lund's officers and employees have had routine business dealing with Norcold, and they occasionally visited Sidney, Ohio, for meetings, negotiations, and marketing and distribution work (Riethman Decl. ¶ 4).[6] He adamantly disputes statements in Oakes' Declaration, stating:

> It is absolutely untrue, as stated and implied by Oakes at paragraph 6 of his declaration, that all sales and distribution negotiations between Lund and the owners of the Norcold business have involved only the states of Michigan and· the province of Ontario. Lund was negotiating, conducting distribution related business and meeting persons from and

in Sidney, Ohio[,] since before Thetford bought the business in 1997. Contrary to the lack of memory of Oakes, I remember numerous telephone calls, facsimiles and correspondence between Lund and the people in Sidney, Ohio[,] from 1980 through 1998. Since the late 1970's Lund personnel have been to Sidney, Ohio[,] to conduct business with personnel of Norcold on an occasional basis. In fact, until early 1999, there was routine contact and communication between Norcold and Lund regarding a number of issues including but not limited to, reimbursement for warranty work, payment of receivables and the placement of orders for products.

(Id.¶ 5). Mr. Riethman states that Thetford has never been a party to any contract with Lund for the distribution of Norcold products (id.¶ 6). Construing the evidence in the light most favorable to Plaintiff, the declaration of Mr. Riethman establishes a *prima facie* case that Lund purposefully availed itself of the privilege of conducting business in Ohio.

In addition, the cases cited by Defendant, most notably *LAK, Inc. v. Deer Creek Enters.,* 885 F.2d 1293 (6th Cir. 1989), *cert. denied,* 494 U.S. 1056, 110 S.Ct. 1525, 108 L.Ed.2d 764 (1990), are inapposite to the present circumstances. In *LAK,* 885 F.2d 1293 (6th Cir.1989), *cert. denied,* 494 U.S. 1056, 110 S.Ct. 1525, 108 L.Ed.2d 764 (1990), the plaintiff, a Michigan corporation, contacted the defendant, an Indiana company, in Florida to discuss the purchase of property in Florida. Negotiations included conversations via telephone and facsimile to Michigan; however, defendant never traveled to Michigan during negotiation of the contract, did not do business in Michigan, and had no agent for service of process in Michigan. The Sixth Circuit further found that no continuous relationship was contemplated by the

---

**6.** In his Second Declaration, Mr. Oakes states that Lund employees have visited Norcold's facilities in Ohio a total of six times since 1970, the most recent occurring in 1989 (Oakes 2d Decl. ¶ 2). He also states that two

meetings held in early 1999, regarding Lund's distribution arrangement for Norcold products, involved only Thetford and Lund employees, and that no Norcold employees were present (*id.* ¶ 4–5).

agreement. Accordingly, the Sixth Circuit found that the defendant had not purposefully availed itself of the privilege of conducting business in the forum state.

Similarly, in *Kerry Steel, supra,* also cited by Defendant, the court held that there was no personal jurisdiction in Michigan, where the defendant had no employees or offices in Michigan, no employee had been to Michigan to conduct business, the plaintiff had contacted defendants in Oklahoma, and there was no indication that the purchase orders sent to Michigan represented more than an isolated transaction.

More recently, however, the Sixth Circuit has found that personal jurisdiction existed over an out-of-state defendant where the agreement was executed without the defendant's direct involvement in Ohio, but where a continuing obligation was created. In *Cole,* a case cited by Plaintiff, an Ohio resident sued, in Ohio, a California resident for breach of a surety agreement. 133 F.3d 433. The agreement was negotiated through telephone conversations between California and Ohio, and the agreement was executed by sending the agreement through the mail between Ohio and California and back. *Id.* The Sixth Circuit found that by negotiating and executing a contract via telephone calls and letters to an Ohio resident, the nonresident defendant had purposefully availed himself of the privilege of conducting activities in Ohio by creating a continuing obligation in this state. *Id.*

The major distinguishing factor between *LAK* and *Kerry Steel* and this litigation is the extent of the relationship between the parties involved. In *LAK* and *Kerry Steel,* each of the arrangements at issue was an isolated agreement; the transactions contemplated were essentially "one-shot deals." In contrast, the evidence presented by the parties herein indicates that they maintained a relationship for over thirty years, and that Lund purchased products from Norcold for distribution in Canada via purchase orders sent to Ohio. The ac-

counts receivable report submitted by Plaintiff indicates numerous receivables due from Lund as of August 4, 1999, with payment due dates between June 27, 1999, and September 5, 1999, representing countless transactions. Construed in the light most favorable to Plaintiff, Norcold's evidence that Lund employees had routine business dealings with it; that Defendant's employees occasionally visited Sidney, Ohio, for meetings, negotiations, and marketing and distribution work; and that Defendant sent requests for products and payment to Ohio on a monthly basis indicates that Lund's contact with Norcold in Ohio was not isolated or attenuated but, rather, substantial and continuous. Accordingly, Plaintiff has presented a *prima facie* case that Lund has purposefully availed itself of the privilege of conducting activities in Ohio.

### 2. *Cause of Action Arises From Defendant's Activities in Ohio*

■ *Second,* for personal jurisdiction to exist, the cause of action also must arise from Lund's activities in the forum state. Defendant states that the only injury alleged herein is an injury to Norcold's "purse." Citing to *LAK* and *Kerry Steel, supra,* Lund argues that Sixth Circuit authority has established that "the location of a plaintiff's purse is irrelevant to the jurisdictional inquiry." In particular, Defendant cites to the court in *LAK,* which stated: "Because the plaintiff was domiciled in Michigan, to be sure, the claimed injury to its purse might be said to have been suffered there—but the locus of such a monetary injury is immaterial, as long as the obligation did not arise from 'a privilege the defendant exercised in [the forum state].'" 885 F.2d at 1302–3. Defendant also cites to *Kerry Steel,* wherein the Sixth Circuit stated:

We are not persuaded that Kerry Steel has shown that its cause of action "ar[o]se from the defendant's activities" in Michigan. At its most basic level, the claim arose out of Paragon's failure to

pay the full purchase price, based on the purported non-conformity of the goods with the specifications of the contract. The refusal to pay occurred in Oklahoma.

106 F.3d at 152. Defendant argues that the facts herein are analogous to those in *LAK* and *Kerry Steel*, thus warranting a finding that Plaintiff's injury did not arise from its activities in Ohio.

The present case is similar to *Kerry Steel* in that Plaintiff's claims arise from Lund's failure to pay for goods received. However, other material facts are distinguishable. In *Kerry Steel*, the plaintiff, a Michigan steel service center, sought out the defendant, an Oklahoma pipe fabricator, and the two parties entered into a single contract whereby the defendant purchased $300,000 worth of steel coils. Although that contract was arranged by telephone conversations and facsimile transmissions and the purchase orders were sent to Michigan, the defendant took possession in Illinois and there was no evidence that the coils were ever in the state of Michigan. In contrast, the evidence presented herein, viewed in the light most favorable to Plaintiff, demonstrates that, although the alleged failure to pay the purchase price occurred in Canada, the parties repeatedly and over an extended period of time entered into contracts whereby Lund would purchase Norcold's products to distribute in Canada. The evidence further demonstrates that Plaintiff's principal place of business is located in Ohio, Defendant's purchase orders were sent to Ohio, Plaintiff's manufacturing plant and products were located in Ohio, and Plaintiff arranged for the shipment of its goods from Ohio to Defendant in Ontario. Thus, the evidence supports a *prima facie* case that Defendant's actions created the obligations to Norcold, at issue in this litigation, in the state of Ohio. Furthermore, Lund's alleged failure to pay for goods received under those contracts negatively impacted Norcold in Ohio. Accordingly, Plaintiff's causes of action stemming from Lund's alleged breach of those obligations arise from Defendant's actions in Ohio. *See Cole*, 133 F.3d at 436 (stating that if the cause of action is for breach of a contract which was created in Ohio, the cause of action naturally arises from the defendant's activities in Ohio).

### 3. Fundamental Fairness

■ *Finally*, to exercise personal jurisdiction, the acts of Defendant or consequences caused by Defendant must have a substantial enough connection with the forum state to make its exercise of jurisdiction over Lund fundamentally fair. When a court finds that a defendant has purposefully availed itself of the privilege of conducting activities within Ohio and the cause of action arose from that contact, it is presumed that the assertion of personal jurisdiction is proper. *Cole*, 133 F.3d 433; *see American Greetings Corp.*, 839 F.2d at 1170 (when first two elements met, an inference arises that the third is also met). A court must consider several factors in this context, including "the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies." *American Greetings Corp.*, 839 F.2d at 1169–70.

Lund has argued that litigating this matter in Ohio is unreasonable, because the dispute arises from a distribution agreement that is, in both form and practice, between Lund and Thetford. It further argues that this Court would be required to interpret and apply Canadian law, and that litigation concerning the purported termination of the distributorship agreement is currently pending in an Ontario court. Other than noting that an inference of fairness arises under the circumstances presented, Plaintiff has not directly addressed Defendant's arguments with regard to the fundamental fairness prong of the due process analysis. However, it indirectly responds to each of Lund's fundamental fairness assertions in

discussing Defendant's *forum non conveniens* arguments. The Court will therefore draw upon those arguments, as well.

Although Lund has asserted that the distribution agreement is between Lund and Thetford, Plaintiff has provided substantial evidence that Lund's agreement was with it, not Thetford. Mr. Riethman, President of Norcold, states that Norcold is an independent subsidiary of Thetford and that Thetford has never been a party to any contract with Lund for the distribution of Norcold products. He further states that Norcold personnel have continued to play a "significant" role in the business dealings with regard to the distribution relationship with Lund, and that the resolution of any disagreement in the relationship would require execution and implementation by Norcold. In addition, the March 8, 1999, correspondence which terminated the distribution agreement between the parties appears to be from Norcold, not Thetford. It is written on Norcold letterhead, references an agreement between Norcold and Lund, and is signed by Norcold's President, Mr. Riethman. Moreover, this dispute arises solely from Defendant's alleged failure to pay for products sent to Defendant from Norcold in Ohio. Thus, litigation in the state where Norcold maintains its principal place of business appears to be fundamentally fair.

In addition, Defendant's assertion that Ontario courts are the proper forum due to the application of Ontario law and the pending litigation therein does not render litigation in Ohio unfair. Defendant has stated that litigation is currently pending in Ontario against Thetford, not Norcold, and that the Canadian action is for breach of the distribution agreement, arising substantially out of the termination of that agreement. Defendant has not shown that Plaintiff's claims for account stated cannot

be litigated separately in this forum (there is no indication that either parties' conduct regarding the actual distribution of goods in Canada is at issue), nor has it demonstrated that it would be prejudiced by this Court's application of the relevant law.[7] In addition, because Lund allegedly breached contracts created in Ohio, this state has an interest in this matter as does Norcold, a company with its principal place of business in this state. *Advanced Polymer Sciences, Inc. v. Phillips Indus. Servs.*, 34 F.Supp.2d 597, 602 (N.D.Ohio 1999)("Ohio has a strong interest in this case because it involves goods manufactured in Ohio and shipped from Ohio."). Moreover, although resolution of this matter may not be as expeditious as in an Ontario court, there is no indication that litigation in this forum would be inefficient. Accordingly, the litigation of this action in the present forum does not violate traditional notions of fair play and substantial justice. Thus, the Court finds that, viewing the Complaint and evidence in the light most favorable to Plaintiff, Norcold has established a *prima facie* case that this Court has personal jurisdiction over Lund. Defendant's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. # 4) is OVERRULED.

## II. *Forum Non Conveniens*

■ Lund also requests that this Court dismiss this litigation under the doctrine of *forum non conveniens*.[8] The Supreme Court recognized, in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), that federal courts have discretion to dismiss actions for damages, in narrow circumstances, under the doctrine of *forum non conveniens*. Pursuant to the common-law doctrine of *forum non conveniens*, a district court is empowered to dismiss an action over which it has jurisdiction when trial in the chosen forum

---

7. The Court makes no determination at this time as to which law—Ohio, Michigan, or Canadian—is applicable to the present litigation.

8. The Court notes that 28 U.S.C. § 1404(a) does not apply in this litigation, because Defendant is seeking to litigate in a foreign forum.

would "establish ... oppressiveness and vexation to a defendant ... out of all proportion to plaintiff's convenience," or when the "chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems." *Koster v. Lumbermens Mut. Casualty Co.*, 330 U.S. 518, 524, 67 S.Ct. 828, 91 L.Ed. 1067 (1947); *Tantus Prods., Inc. v. Lloyd*, 848 F.2d 194, 1988 WL 48511 at *2 (6th Cir. May 16, 1988). In *American Dredging Co. v. Miller*, 510 U.S. 443, 449 n. 2, 114 S.Ct. 981, 127 L.Ed.2d 285 (1994), the Supreme Court noted that the common law *forum non conveniens* doctrine applies only "where the alternative forum is abroad."

■ A necessary prerequisite to dismissal under the doctrine of *forum non conveniens* is the existence of an adequate alternative forum. *Gulf Oil*, 330 U.S. at 506–7, 67 S.Ct. 839. Once that prerequisite has been satisfied, the district court must balance various private and public interest factors in considering a *forum non conveniens* motion for dismissal. *Dowling v. Richardson–Merrell, Inc.*, 727 F.2d 608, 612 (6th Cir.1984) (quoting *Gulf Oil*, 330 U.S. at 508–09, 67 S.Ct. 839) (citations omitted). The defendant bears the burden of proof on all elements of the *forum non conveniens* analysis. *Stalinski v. Bakoczy*, 41 F.Supp.2d 755, 758 (S.D.Ohio 1998)(Dlott, J.). The doctrine leaves much to the discretion of the district court, and the court's decision will be upheld absent a clear abuse of discretion. *Dowling*, 727 F.2d at 616.

### A.  *Adequate Alternative Forum*

Lund has stated that the Canadian court system provides an adequate alternative forum for this litigation. Plaintiff has not refuted this assertion, and the Court finds that Defendant is correct. As stated by Lund, it is a Canadian corporation, subject to Canadian law and subpoena power. A

number of courts in the Sixth Circuit have acknowledged that the Canadian courts afford litigants the same fundamental procedures and remedies as are available in American courts. *Aristech Chem. Internat'l Ltd. v. Acrylic Fabricators Ltd.*, 138 F.3d 624, 629 (6th Cir.1998)("[A] Canadian defendant litigating in the United States finds a judicial system 'rooted in the same common law traditions' as that of Canada."); *Southern Sys., Inc., v. Torrid Oven Ltd.*, 58 F.Supp.2d 843, 852 (W.D.Tenn. 1999); *see Ensign–Bickford Co. v. ICI Explosives USA, Inc.*, 817 F.Supp. 1018, 1031 (D.Conn.1993)("Moreover, the unfairness of forcing a foreign party to litigate in an unfamiliar legal system is alleviated here by the fact that the Canadian legal system is similar in many respects to the legal system in the United States."). Accordingly, Defendant has satisfied the first requirement of the *forum non conveniens* analysis.

### B.  *Public Factors*

■ The Supreme Court has identified relevant public interest factors, to wit: administrative difficulties of courts with congested dockets; the burden of jury duty on people of a community having no connection with the litigation; desirability of holding a trial near those most affected by it; and the appropriateness of holding a trial in a diversity case in a court which is familiar with governing law. *Gulf Oil*, 330 U.S. at 508–9, 67 S.Ct. 839. Lund argues that these factors weigh heavily in favor of trying this matter in a Canadian forum. *First*, Defendant argues that this Court has a heavy docket and, therefore, a Canadian forum could likely provide a more expeditious resolution.[9] *Second*, it argues that this controversy involves a Canadian agreement, and that the "localized" interests should be adjudicated there. *Third*, Lund asserts that the distribution agreement is governed by Canadian law and,

---

9.  Defendant notes that as of August, 1999, this Court's civil docket included more than 450 cases.

therefore, the matter is best adjudicated by a Canadian tribunal.

Plaintiff argues that the public interests do not warrant dismissal. Specifically, Norcold asserts that the aggrieved party is located in Ohio, and that there is a strong interest in resolving this controversy in this forum. It further contends that the distribution agreement is silent as to the applicable law. In addition, it states, in a conclusory fashion, that the argument that this Court would be overburdened by this litigation is without merit.

As to Defendant's first two arguments, although resolution of this matter may not be as expeditious as in the Superior Court of Justice in Toronto, there is no indication that litigation in this forum would be inefficient such that the parties would be prejudiced by being required to litigate in this District. In addition, although Defendant's relationship with Plaintiff primarily involved the distribution of Norcold's goods in Canada, this litigation concerns its failure to pay for goods manufactured in Ohio and sent to Canada, not Defendant's distribution activities once those goods arrived in that country. Accordingly, Ohio has a strong interest in this case.

Defendant's most persuasive argument, *i.e.,* that a case which is to be governed by Canadian law should be adjudicated in a Canadian forum, also does not warrant dismissal, based on the evidence before the Court. Lund has repeatedly argued that the distribution agreement between the parties is governed by Canadian law. However, the sole distribution agreement before the Court (which Defendant claims is inapplicable to the present dispute) was agreed upon while Norcold was a division of Stolle Corporation and is silent as to choice of law. The parties have not presented any other relevant agreement to the Court,[10] nor have they provided any evidence that they had previously agreed that their relationship would be governed by Canadian law. Furthermore, neither party has provided the Court with specific evidence to enable it to embark upon the complex choice of law analysis. In addition, Plaintiff's claims involve only Defendant's alleged failure to pay for goods sold and delivered and, therefore, they implicate only the terms regarding payment. Neither party has specified how Canadian law would impact the Court's interpretation of those terms.[11] Based on the foregoing, the Court concludes that Defendant has not established that this litigation is governed by Canadian law, or that this Court will be required to interpret Canadian law in resolving *this* dispute. Moreover, Plaintiff disputes that the agreement is governed by Canadian law. *See Southern Sys.,* 58 F.Supp.2d at 853 (accepting Plaintiff's factual averment that it did not agree that its contract with Defendant would be governed by Canadian law, even though Defendant argued that Canadian law applied, during *forum non conveniens* analysis). The Court therefore concludes that the evidence before it concerning the applicable law does not warrant dismissal of this lawsuit. Accordingly, an evaluation of the public factors does not weigh strongly in favor of dismissal.

### C. Private Factors

In *Gulf Oil,* the Supreme Court also identified important private interest

---

10. Both parties have submitted the March 8, 1999, correspondence, which terminates the distribution agreement between the parties. Although that letter states that "[t]his letter agreement shall be governed by and construed in accordance with the laws of Ontario," this litigation is not concerned with whether Norcold rightfully and properly terminated the distribution agreement. Accordingly, the choice of law provision in that letter is irrelevant to the present dispute.

11. In its Complaint, Norcold alleged that under the terms of the distribution agreement, payment was to be made pursuant to a 2%, 30 days, net 60 arrangement, whereby Lund was to receive a 2% discount for payments made within 30 days of the invoice date. It further alleged that, following its notice to Defendant that it was terminating the agreement, Defendant continued to order goods but ceased paying on the open account for purchases made in the past and never paid for goods newly ordered.

considerations, including "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." 330 U.S. at 508, 67 S.Ct. 839. The district court must also consider problems in enforcing a judgment if one is obtained and relative advantages and obstacles to a fair trial, if any. *Id.*

Lund argues that the private factors also weigh in favor of a Canadian forum, because all of Lund's employees, its potential witnesses, reside and work in Canada and all of its documents are located there. It further states that any necessary testimony by former Lund employees would be more accessible in Canada, where most, if not all, reside. In addition, Defendant emphasizes that the parties are currently engaged in litigation in Canada, as Lund filed suit in the Superior Court of Justice in Toronto on August 25, 1999, in response to the termination of the distribution relationship.

"There is no question that the 'factors to be considered in ruling upon a *forum non conveniens* motion should include the availability of compulsory process to obtain the attendance of unwilling witnesses, and the costs of obtaining attendance of willing witnesses'." *Mead Data Central v. West Publishing Co.,* 679 F.Supp. 1455, 1466 (S.D.Ohio 1987)(Rice, J.) (quoting *AMF, Inc. v. Computer Automation, Inc.,* 532 F.Supp. 1335, 1341 (S.D.Ohio 1982)). As to the anticipated witnesses that are employees, both parties have the power to compel those witnesses to testify, regardless of the location of this litigation. *Id.* Although the Court does not have the power to compel the testimony of former employees, Defendant has not identified those potential witnesses and has not indicated whether those former employees would likely be unwilling, as opposed to willing,

witnesses, thereby requiring the availability of compulsory process. *See AMF, Inc. v. Computer Automation, Inc.,* 532 F.Supp. 1335, 1341 (S.D.Ohio 1982)(Rice, J.). In addition, Plaintiff has presented evidence that it has numerous witnesses in Ohio, whose transportation would be required at its expense if the litigation of Plaintiff's claims were to occur in Canada. In addition, although Lund has stated that it would cost thousands of dollars to transport witnesses from Ontario to Ohio, "only a short plane flight separates Ontario from [Ohio]." *Aristech,* 138 F.3d at 628. Defendant's arguments regarding the inconvenience of transporting witnesses due to transportation difficulties applies equally to Plaintiff. Accordingly, the evidence suggests that dismissal of this action and requiring Plaintiff to refile in Ontario would merely shift the inconvenience of litigating from Defendant to Plaintiff.

Nor does Defendant's argument that litigation is currently pending in Toronto weigh in favor of dismissal of this action. As stated above, the litigation pending in the Superior Court of Justice in Toronto has been brought by Lund against *Thetford* for breach of the distribution agreement. In that Canadian lawsuit, Lund has alleged that Thetford wrongfully terminated the distribution agreement, and that Thetford breached the distribution agreement by failing to provide Lund with marketing materials related to the Norcold product line, in order to facilitate the distribution of Norcold products. That litigation does not involve Norcold, the plaintiff in this action. In addition, the litigation before this Court does not involve issues of wrongful termination of the distribution agreement. The instant action is limited to the allegation that Lund failed to pay for products manufactured by and delivered by Norcold to Defendant; it is simply an action for account stated. Accordingly, the Court sees no reason why Plaintiff's action should be dismissed, with the requirement that it refile in and seek to enter a Canadian lawsuit to which it is not

a party. Upon an evaluation of the private factors, the Court concludes that the inconvenience of litigating in Ohio is not so substantial as to warrant dismissal of Plaintiff's lawsuit.

For the foregoing reasons, Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and Forum Non Conveniens (Doc. # 4) is OVERRULED.[12]

**12.** In footnote 3 of its Memorandum (Doc. # 4), Defendant requests dismissal of Plaintiff's Complaint, pursuant to Fed.R.Civ.P. 12(b)(5), stating that Plaintiff has failed to serve it in accordance with the Hague Convention. Plaintiff has responded (in footnote 1 of its memorandum) that Defendant was served by certified mail, in accordance with the Ohio Rules of Court and the local rules, and by hand delivery of the Complaint to Kris Oakes. Defendant has replied that the United States Postal Service cannot certify mail to Canada, that the Ohio Rules of Civil Procedure cannot trump the Hague Convention, and that service by hand delivery to Oakes is insufficient as a matter of law. Defendant's challenge to Plaintiff's service on that foreign defendant raises questions regarding the interplay between state, federal, and international law. Such issues are more properly raised in a fully briefed motion, rather than as a paragraph in a footnote. Accordingly, Defendant's motion to dismiss, pursuant to Rule 12(b)(5), is OVERRULED, without prejudice to renewal as a fully briefed, separately filed motion.