CONSOLIDATED RAIL CORP., Plaintiff,

v.

NEW ENGLAND CENTRAL RAILROAD, INC., Defendant.

Civil Action No. 98–CV–1343.

United States District Court,
E.D. Pennsylvania.

Sept. 21, 1998.

capital improvements that were not pre-approved.

Paul D. Keenan, Buchanan, Ingersoll, Philadelphia, PA, for plaintiff.

William J. Leonard, Obermayer, Rebmann, Maxwell & Hippel, LLP, Philadelphia, PA, Michael E. Blaszak, LaGrange, IL, Thomas A. Kenefick, Springfield, MA, for defendant.

### MEMORANDUM & ORDER

KELLY, District Judge.

Defendant, New England Central Railroad, Inc. ("NECR"), filed the present Motion to Dismiss or in the Alternative to Transfer. NECR argues that this action should be dismissed because NECR is not subject to personal jurisdiction in the Eastern District of Pennsylvania. In the alternative, NECR argues that venue is improper in the Eastern District of Pennsylvania, therefore this matter should be dismissed or transferred to the Western District of Massachusetts.

### I. BACKGROUND

Consolidated Rail Corporation ("Conrail"), the Plaintiff in this action, entered into an agreement with NECR's predecessor, Central Vermont Railway, Inc. ("CVR") on September 1, 1983. The agreement was reached to resolve a dispute over the maintenance of an interlocking signal system at an intersection of Conrail and CVR tracks in Palmer, Massachusetts, known as the Diamond Crossing. The agreement also resolved a dispute concerning the derailment of a Conrail train in New London, Connecticut. The agreement provided that CVR would be responsible for 100% of the cost of track maintenance at Diamond Crossing, as well as 40% of labor costs for maintenance of communications and signals. While either party can initiate capital improvements at Diamond Crossing, the other party must pre-approve such improvements to be held accountable for a portion of the expenditure. CVR also agreed to release Conrail from any claims related to a previous derailment in New London, Connecticut. This dispute arises out of repairs made by Conrail at Diamond Crossing. NECR contends that the repairs are

### II. PERSONAL JURISDICTION

In its motion to dismiss, NECR asserts that it does not have sufficient minimum contacts with Pennsylvania in order to reasonably expect that it will be haled into court there. A district court asserts personal jurisdiction over a nonresident defendant to the extent allowed by state law in the forum state. Fed.R.Civ.P. 4(e). Pennsylvania's long arm statute allows jurisdiction "to the fullest extent allowed under the Constitution of the United States." Pa. Con. Stat. Ann. § 5322(b). Thus, "the constitutional touchstone remains whether the defendant established 'minimum contacts' in the forum state." *Burger King v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

NECR takes great effort to assert that it has no place of business in Pennsylvania, owns no track in Pennsylvania and is not registered to do business in Pennsylvania. While any one of these contacts, if present, would conclusively establish jurisdiction over NECR in Pennsylvania, the Court's inquiry, as asserted by NECR, does not end with these contacts.

Conrail has not delineated whether it argues that personal jurisdiction over NECR is appropriate based upon specific or general jurisdiction. "Specific jurisdiction is invoked when the cause of action arises from the defendant's forum related activities." *North Penn Gas v. Corning Natural Gas*, 897 F.2d 687, 690 (3d Cir.1990). General jurisdiction is appropriate where a defendant maintains continuous and substantial contacts with a forum, whether or not those contacts are related to the cause of action. *Reliance Steel Prod. Co. v. Watson, Ess, Marshall & Enggas*, 675 F.2d 587, 588 (3d Cir.1982). Since Conrail asserts NECR contacts that would support both specific and general jurisdiction, as well as contacts that would only support general jurisdiction, the Court shall start its analysis with specific jurisdiction.

### A. Specific Jurisdiction

Even to establish specific jurisdiction, minimum contacts analysis does not require a physical presence in the forum. *North Penn Gas,* 897 F.2d at 691. Rather, the analysis is driven by whether the defendant's activities amount to a purposeful availment of the "privilege of conducting activities within the forum state." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). If the defendant has minimum contacts with the forum state, the court must then determine whether jurisdiction over the defendant "accords with the notions of 'fair play and substantial justice.'" *Mesalic v. Fiberfloat Corp.,* 897 F.2d 696, 701 (3rd Cir. 1990) (quoting *International Shoe,* 326 U.S. at 316, 66 S.Ct. 154.)

Sufficient minimum contacts with Pennsylvania were established, despite no physical presence in Pennsylvania, when a defendant New York natural gas corporation signed a storage agreement with a Pennsylvania gas company that contemplated a thirty year relationship; the Pennsylvania gas company reserved storage space for defendant; and defendant intervened in the Pennsylvania gas company's tariff proceedings and defendant forwarded payments to Pennsylvania. *North Penn Gas,* 897 F.2d at 691. Similarly, a defendant Florida boat manufacturer had sufficient contacts to be sued in New Jersey where the boat manufacturer delivered a boat to the plaintiff in New Jersey, a mechanic was sent to New Jersey to repair the boat and significant mail and telephone contacts were directed by the defendant to New Jersey. *Mesalic,* 897 F.2d at 701.

### 1. NECR'S Contract-related Pennsylvania Contacts

On a motion to dismiss for lack of personal jurisdiction, a plaintiff must come forward with affidavits or other competent evidence to establish the defendant's contacts with the forum state. *Patterson by Patterson v. FBI,* 893 F.2d 595, 603–604 (3d Cir. 1990). Based upon the evidence presented, the Court finds that NECR assumed a CVR contract with Conrail, a Pennsylvania corporation. For fifteen years, NECR, and previously CVR, received the benefit of the contract; the plan specified how signal and track maintenance costs would be allocated. This contract was valuable enough to CVR that it not only agreed to be responsible for 40% of communications and signals labor costs and 100% of track costs at Diamond Crossing, CVR also agreed to absolve Conrail from any liability for the New London derailment. Conrail's responsibilities under the agreement have always initiated out of Pennsylvania and to the extent that CVR or NECR have needed to communicate with Conrail concerning the agreement, those communications have been addressed to Conrail in Pennsylvania.

Based upon the facts presented, CVR and NECR have benefited from a long term relationship with a Pennsylvania corporation, in which contacts have been regularly made with Conrail in Pennsylvania. The contacts with Pennsylvania, derived through the Diamond crossing contract, are sufficient to establish personal jurisdiction over NECR in Pennsylvania. It does not offend notions of fair play and substantial justice to require NECR to defend its actions under a long term contract in Pennsylvania, when the contract was entered into with a Pennsylvania Corporation and contacts with Conrail concerning the Diamond Crossing Agreement were directed to Pennsylvania.

### B. NECR's General Pennsylvania Contacts

In addition to the contacts related to the Diamond Crossing Agreement, Conrail has submitted evidence of substantial additional general contacts that NECR maintains with Pennsylvania. Business issues addressed to Conrail in Pennsylvania include marketing, sales, billing, interchange and freight rate issues. NECR prepares freight revenue division abstracts which are forwarded to Conrail in Pennsylvania. Conrail prepares freight revenue division abstracts in Pennsylvania which are forwarded to NECR. As a result of these abstracts, Conrail and NECR participated in the division of $17,863,285 of freight revenue in 1997. NECR also prepared reports of the rental of Conrail freight cars which were forwarded to Conrail in Pennsylvania. As a result of these rentals, rental fees are forwarded by NECR to Pennsylvania.

Based upon the uncontroverted facts asserted as to the volume and quality of NECR's contacts with Pennsylvania, the Court finds that NECR has continuously and systematically availed itself of the privilege of doing business in the state of Pennsylvania. Accordingly, personal jurisdiction over NECR is appropriate in Pennsylvania based upon the doctrine of general jurisdiction.

## III. DISMISSAL FOR IMPROPER VENUE

NECR argues that this matter should be dismissed because venue is improper in Pennsylvania. NECR is a Delaware corporation with its principal place of business in Vermont. As a corporation, NECR is deemed to reside in Pennsylvania as it is subject to personal jurisdiction in Pennsylvania. 28 U.S.C. § 1391(c). Venue is proper in "a judicial district where any defendant resides." Id. § 1391(a)(1). As the Court has determined that NECR is subject to personal jurisdiction in Pennsylvania in this action, venue is also proper.

## IV. CHANGE OF VENUE

Finally, NECR moved to transfer venue in this matter to the Western District of Massachusetts pursuant to 28 U.S.C. § 1404(a), which provides: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The proposed transferee court must also be one in which venue is proper. The Western District of Massachusetts is an appropriate venue for this case because NECR is located in that jurisdiction. See id. § 1391(a).

Although the district court is vested with wide discretion in making the transfer decision, the burden of justifying the transfer is on the moving party. Plum Tree, Inc. v. Stockment, 488 F.2d 754, 756 (3d Cir.1973); Leonardo Da Vinci's Horse, Inc. v. O'Brien, 761 F.Supp. 1222, 1229 (E.D.Pa.1991). The factors which the court may consider in ruling on a motion to transfer are:

1. the plaintiff's choice of forum;
2. relative ease of access to sources of proof;
3. availability of compulsory process for attendance of unwilling witnesses and cost of obtaining attendance of willing witnesses;
4. possibility of view of the premises, if appropriate;
5. all other practical problems that make trial of a case easy, expeditious and inexpensive; and
6. factors of public interest, including the relationship of the community in which the courts and jurors are required to serve to the occurrences that give rise to the litigation.

Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508–09, 67 S.Ct. 839, 91 L.Ed. 1055 (1947); National Mortgage Network, Inc. v. Home Equity Ctrs., Inc., 683 F.Supp. 116, 119 (E.D.Pa.1988).

The Third Circuit has stated that the plaintiff's selection of a proper forum is a "paramount consideration" and should not be "lightly disturbed." Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir.1970). A balancing of the other choice of forum considerations is, however, equally as important as the plaintiff's initial choice of forum. Conrail has chosen the Eastern District of Pennsylvania as its favored forum for the litigation of the present controversy. Conrail is a Pennsylvania resident with its principal place of business in this state. Conrail's relationship with NECR concerning repairs to the Diamond Crossing are centered in Pennsylvania as evidenced by NECR's letter to Conrail of July 15, 1996, in which it disclaims liability for a percentage of the repairs to Diamond Crossing. NECR's letter is addressed to Conrail in Philadelphia. Conrail believes that Philadelphia would provide Conrail with the most convenient forum. As a plaintiff, Conrail is entitled to make this determination and this determination is entitled to great weight. Shutte v. Armco Steel Corp., 431 F.2d at 25.

Relevant events underlying this controversy occurred throughout the United States, specifically Massachusetts and Pennsylvania, but perhaps also at NECR's principal place of business in Vermont. Accordingly, neither retaining venue in Philadelphia nor

transferring the case to the Western District of Massachusetts will offer substantially greater ease of access to this evidence. There has been no suggestion that either party will need to subpoena unwilling witnesses.

NECR correctly asserts that most of its employees are in New England and will be required to travel a substantial distance to testify in Philadelphia. The strength of NECR's argument is diminished by NECR's admission that witnesses from Vermont may be required to travel to trial whether it is in Massachusetts or Philadelphia. Modern air travel will diminish the burden upon witnesses from New England to travel to Philadelphia. Further, NECR does not identify the specific employees or even class of employees which it expects will need to testify in this matter. Since this is a breach of contract action, the Court foresees interpretation of the phrase "capital improvements" in the Diamond Crossing Agreement as the probable key element of this case. Also, there may be an issue as to whether NECR in fact approved the repairs. These issues are likely to require testimony from only a small, discrete group of NECR employees. Further, alternative procedures for preserving the testimony of Massachusetts and Vermont witnesses de bene esse, such as videotape depositions, will allow NECR to present the testimony that it desires without requiring the witness to travel to Pennsylvania. Accordingly, this factor gives little weight to NECR's argument.

There has been no indication that there is any dispute as to what repairs were undertaken at Diamond Crossing. Rather, NECR has denied its responsibility to pay for what it has determined are capital improvements. Based upon what has been presented to Court in this matter, it seems likely that there will not be a dispute as to what were the actual repairs underlying this controversy. Accordingly, ease of viewing premises is not a factor.

No unique public interest is implicated in having this case tried in either Pennsylvania or Massachusetts. Each state has an interest in having the contracts entered into by its citizens enforced.

Because it appears that the Eastern District of Pennsylvania is Conrail's chosen forum and no other factors strongly favor venue in the Western District of Massachusetts, the Court shall deny NECR's motion and this action shall remain venued in the Eastern District of Pennsylvania.

### V. CONCLUSION

Based upon the facts presented to the Court, NECR is subject to both general and specific jurisdiction in the Eastern District of Pennsylvania in this matter. Holding NECR responsible for its actions under a long term agreement with a Pennsylvania corporation in Pennsylvania does not offend traditional notions of fair play and substantial justice. Since personal jurisdiction over NECR is appropriate in this District, venue is also proper. Finally, analysis of NECR's Motion to Transfer does not warrant transfer of this matter to the Western District of Massachusetts.