### CSX TRANSPORTATION, INC., Plaintiff,

### v.

### UNION TANK CAR COMPANY, Procor Limited, Midland Manufacturing Corp., Kinetic Resources, St. Clair Underground Storage, Interstate Forging Industries, Inc., Carlson Metal Specialties Corp., Pancanadian Petroleum Corp., and Premier Inspection Co., Defendants.

### No. 01–70299.

United States District Court, E.D. Michigan, Southern Division.

March 21, 2002.

---

Robert M. Anspach, Toledo, OH, for plaintiff.

James K. Thome, Troy, Micahel G. Oliva, Lansing, Edward C. Cutlip, Jr., Detroit, Thomas R. Bowen, Troy, George W. Steel, Flint, for defendants.

### ORDER DENYING DEFENDANT PROCOR LIMITED'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

BORMAN, District Judge.

Before the Court is Defendant Procor Limited's motion to dismiss for lack of personal jurisdiction (Docket Entry # 12). Upon consideration of the motion, the submissions of the parties, and the applicable law, the Court will DENY the motion.

### I.  BACKGROUND

#### A.  Facts

The facts of this case were fully set forth in this Court's Order dated October 22, 2001, denying Defendants' Motion for Partial Summary Judgment on Plaintiff's

Claim for Contribution. However, a brief synopsis follows.

This case centers around an incident which occurred on January 21, 2000 when a rail tank car containing propane gas, traveling on CSX track, caught fire in the area of Flint, Michigan. Government agencies evacuated the area surrounding the CSX rail yard for approximately one square mile. The fire caused serious damage to the surrounding area. As a result of the fire, CSX Transportation entered into numerous settlements (allegedly over 3600 claims, *see* Second Amended Compl. ¶ 74) with individuals and entities damaged by the fire. CSX has now filed suit against Procor and others to recoup its costs.

Plaintiff CSX Transportation, Inc. ("CSXT") is the railroad company which owns/operates the McGrew Rail Yard in Flint, Michigan. Defendant Procor Limited ("Procor") allegedly performed an inspection on the rail tank car at issue in January of 1999, in Sarnia, Ontario, Canada. Defendant PanCanadian Petroleum Company owned/was the lessor of the rail tank car. Procor admits to performing the above-noted inspection. (Def. Procor's Motion to Dismiss, at 1.) Plaintiff CSXT alleges that the fire started as a result of a cracked pressure relief valve on the rail tank car. (Second Amended Compl. ¶¶ 17, 19.)

### B. Procedural History

Plaintiff CSXT filed its original complaint on January 22, 2001, alleging claims for negligence, gross negligence, breach of implied warranties, products liability (manufacturing defect and failure to warn), indemnification, and contribution.[1] Defendant Procor Limited filed its motion to dismiss for lack of personal jurisdiction pursuant to FED. R. CIV. P. 12(b)(2) on June 14, 2001. Defendants Union Tank

Car Co. ("UTC") and Procor Limited ("Procor") filed their motion for partial summary judgment as to Plaintiff's claim for contribution on June 28, 2001. That motion was denied by this Court in an Order dated October 22, 2001.

Defendant Procor's motion to dismiss for lack of personal jurisdiction, filed on June 14, 2001 is currently before the Court. The Court held oral argument on the motion on October 15, 2001. After the hearing, the Court provided Plaintiff CSXT and Defendant Procor ninety (90) days to conduct discovery on the issue of personal jurisdiction, and thereafter to file additional briefing. The additional briefing was completed on March 1, 2002.

## II. ANALYSIS

Pursuant to FED. R. CIV. P. 12(b)(2), Defendant Procor seeks to dismiss CSXT's action against it for lack of personal jurisdiction. Although Procor filed the instant motion, CSXT has the burden of setting forth facts establishing a *prima facie* case for personal jurisdiction. *See Kerry Steel, Inc. v. Paragon Indus., Inc.,* 106 F.3d 147, 149 (6th Cir.1997); *Theunissen v. Matthews,* 935 F.2d 1454, 1458 (6th Cir.1991).

■ When presented with a properly supported motion to dismiss for lack of personal jurisdiction, the court has three procedural options: (1) it may rule on the motion based on affidavits alone; (2) it may permit discovery to assist in deciding the motion; or (3) it may conduct an evidentiary hearing to resolve any apparent questions. *See Theunissen v. Matthews,* 935 F.2d 1454, 1458 (6th Cir.1991). As explained above, the parties were given discovery time to develop a record as to Procor's contacts with Michigan. The Court will now rule on the motion to dis-

---

1. The complaint has been amended twice. The amendments do not impact this motion.

miss on the basis of the full record before the Court.

In diversity cases, a federal court may exercise personal jurisdiction over a foreign defendant only to the extent that a court of the forum state could do so. *See Kerry Steel*, 106 F.3d at 148. Both the forum state's long-arm statute and the due process requirements of the Fourteenth Amendment of the United States Constitution must be satisfied in order to exercise personal jurisdiction over an out-of-state defendant. *See id.* at 149.

A court may have personal jurisdiction over a defendant either by general jurisdiction or specific jurisdiction. *See id.* General personal jurisdiction exists when a defendant has "continuous and systematic contacts with the forum state sufficient to justify the state's exercise of judicial power with respect to any and all claims the plaintiff may have against the defendant." *Id.* Specific personal jurisdiction "exposes the defendant to suit in the forum state only on claims that 'arise out of or relate to' a defendant's contacts with the forum." *Id.* (quoting and citing, *inter alia, Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 414–15 nn. 8–10, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)).

Michigan's statutory long-arm requirements relating to general and specific[2] personal jurisdiction over foreign corporations are set forth in MICH. COMP. LAWS ANN. §§ 600.711 and 600.715, respectively. These long-arm requirements have been construed to grant courts sitting in Michigan the broadest possible scope of personal jurisdiction permitted by the Due Process Clause of the Fourteenth Amendment. *See Neighbors v. Penske Leasing, Inc.* 45 F.Supp.2d 593, 597 (E.D.Mich.

1999) (citing *Sifers v. Horen*, 385 Mich. 195, 188 N.W.2d 623 (1971)). Since Michigan's long-arm statute extends to the constitutional limits of the Fourteenth Amendment, the analysis merges and the Court need only determine whether personal jurisdiction over the defendant exists under the Due Process Clause. *See Neighbors, id.* (citing *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 793 (6th Cir.1996)).

In *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945), the Supreme Court held that due process requires that a defendant "have certain minimum contacts" with the forum state such that the exercise of jurisdiction would comport with "traditional notions of fair play and substantial justice." The Sixth Circuit employs a three-part test for determining whether personal jurisdiction may be exercised in compliance with due process: (1) the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state; (2) the cause of action must arise from the defendant's activities there; and (3) the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. *See Kerry Steel*, 106 F.3d at 150 (quoting *Southern Mach. Co. v. Mohasco Indus. Inc.*, 401 F.2d 374, 381 (6th Cir.1968)).

Subsequent to the development of these three requisites, the Supreme Court clarified the requirement for purposeful availment in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The Court held that for a

---

2. Michigan courts use the term "limited" personal jurisdiction synonymously with the term "specific" personal jurisdiction. *See Neighbors v. Penske Leasing, Inc.*, 45 F.Supp.2d 593, 595 n. 1 (E.D.Mich.1999) (citing *Green v.*

*Wilson*, 455 Mich. 342, 565 N.W.2d 813 (1997)). This Court will use the term "specific" personal jurisdiction to refer to limited personal jurisdiction.

foreign defendant to be subjected to a state's personal jurisdiction, the defendant must have "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* at 475, 105 S.Ct. 2174 (quotation marks and citation omitted). This requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts or of the unilateral activity of another party or a third person." *Id.* (quotation marks and citation omitted).

## A. General Personal Jurisdiction

Courts sitting in Michigan may exercise general personal jurisdiction over a foreign corporation that: (1) is incorporated under the laws of Michigan; (2) consents to such jurisdiction, to the extent authorized by the consent; or (3) carries on a continuous or systematic part of its general business within Michigan. *See* MICH. COMP. LAWS ANN. § 600.711. The first two options are not present in this case; the issue is whether Defendant Procor meets the third.

■ Unilateral acts by third parties cannot form the basis for subjecting a defendant to personal jurisdiction in a particular state. *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 417, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984) (citing, *inter alia, Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.")). In *Helicopteros,* the alleged contacts between the Colombian corporation and the state of Texas were: (1) the CEO of the corporation traveled to Texas to negotiate for a transportation services contract; (2) the corporation accepted some $5 million in checks drawn on Texas banks;

(3) the corporation regularly purchased helicopters and equipment from a Texas manufacturer (composing about 80% of its fleet); (4) that purchase then required follow-up trips for training on the helicopters and equipment. *Helicopteros,* 466 U.S. at 411, 104 S.Ct. 1868. The Supreme Court also noted other relevant factors, which Helicol did not have: (1) not authorized to do business in Texas, (2) does not have an agent for service of process there; (3) never performed helicopter operations in Texas; (4) never sold any product that reached Texas; (5) never solicited business there; (6) had no employees, and never recruited employees, from Texas; (7) did not own any property or maintain any offices there; (8) had no records or shareholders in Texas. *Id.* at 411–12, 104 S.Ct. 1868. The Supreme Court analyzed each contact separately, and held that the contacts were insufficient to satisfy the Due Process Clause of the Fourteenth Amendment, and thus, no general jurisdiction could be established. *Id.* at 418–19, 104 S.Ct. 1868.

The Court agrees with the reasoning of the district court in *Consolidated Rail Corp. v. New England Central Railroad, Inc.,* 23 F.Supp.2d 549 (E.D.Pa.1998) (hereinafter *Conrail* ). The court was presented with a motion to dismiss for lack of personal jurisdiction over a Vermont railroad. After determining that the court could properly exercise specific jurisdiction over the Vermont defendant, the court undertook to analyze the other, general contacts the defendant had in the state of Pennsylvania. *Id.* at 551. The court found:

In addition to the contacts related to the [ ] Agreement, Conrail has submitted evidence of substantial additional general contacts that NECR maintains with Pennsylvania. Business issues addressed to Conrail in Pennsylvania include marketing sales, billing, interchange and freight rate issues. NECR

prepares freight revenue division abstracts which are forwarded to Conrail in Pennsylvania. Conrail prepares freight revenue division abstracts in Pennsylvania which are forwarded to NECR. As a result of these abstracts, Conrail and NECR participated in the division of $17,863,285 of freight revenue in 1997. NECR also prepared reports of the rental of Conrail freight cars which were forwarded to Conrail in Pennsylvania. As a result of these rentals, rental fees are forwarded by NECR to Pennsylvania.

Based on the uncontroverted facts asserted as to the volume and quality of NECR's contacts with Pennsylvania, the Court finds that NECR has continuously and systematically availed itself of the privilege of doing business in the state of Pennsylvania. Accordingly, personal jurisdiction over NECR is appropriate in Pennsylvania based upon the doctrine of general jurisdiction.

*Id.* at 551–52.

■ The Court concludes that Procor has the kind of continuous and systematic contacts with the state of Michigan required to permit exercise of general personal jurisdiction over Procor in this Court.[3]

---

3. The Court is not persuaded by the district court opinion in *Railcar Ltd. v. Southern Illinois Railcar Co.*, 42 F.Supp.2d 1369 (N.D.Ga. 1999), where a Georgia lessor of rail cars sued an Illinois lessee for breach of contract. The Illinois lessee moved for dismissal for lack of personal jurisdiction. The district court granted the dismissal.

The court first analyzed whether the court could exercise specific jurisdiction over the Illinois defendant for the breach of contract claim, and found that such an exercise of jurisdiction would not comport with due process, as the defendant "did not reasonably anticipate being haled into a Georgia court." *Id.* at 1377.

Next, the court considered whether the defendant's "numerous Georgia contacts that are unrelated to the transaction at issue [ ] are sufficient to support an exercise of [general] personal jurisdiction." *Id.* First, the court discussed *Helicopteros, supra,* and the contacts which were at issue there, and that the Supreme Court had found that those contacts "did not show the continuous and systematic contact with Texas necessary to permit the company to be sued there on any claim." *Id.* at 1378. The district court then held:

In this case, SIRC's [the defendant's] contacts with Georgia are far more attenuated than the contacts of Helicol that were found insufficient for general jurisdiction in *Helicopteros*. Far from showing a seven year relationship with a Georgia company requiring the regular travel of employees into the forum, Railcar [the plaintiff] relies upon three contractual arrangements with Georgia entities, the focus of which had little connection to the forum. Unlike Helicol that purchased 80% of its fleet from Texas, SIRC has had less than 5% of its railcar travel in Georgia in the past three years and has business connections with Georgia that represent a small fraction of its overall business. Further, SIRC has little or no control over the destination and travel of its leased railcars that find their way into Georgia. Similar to Helicol, SIRC has no offices of employees in Georgia and has never been registered to do business in the State. Based upon the Supreme Court's rejection of general jurisdiction in *Helicopteros*, the assertion of general jurisdiction over SIRC in Georgia based upon its limited and random contacts with the forum is inappropriate.

*Id.* at 1378–79. Plaintiff argued that the defendant's payment of ad valorem taxes in the state of Georgia, based upon the rail cars it owned that transported items in the state, established general jurisdiction. The court found that although it is one factor to be analyzed in assessing whether the defendant's contacts with Georgia were sufficient, that it "[did] not *a fortiori* establish the continuous and systematic contacts with Georgia necessary to establish general jurisdiction." *Id.* at 1380. The court concluded by holding: "SIRC's ownership of railcars that travel through Georgia in interstate commerce does not show the continuous and systematic contacts with Georgia necessary for the assertion of general jurisdiction." *Id.*

This Court concludes, as discussed *infra,* that the facts established in the instant case

By way of affidavit, Procor makes the following assertions: (1) Procor is a Canadian company, with its principal place of business in Oakville, Ontario, Canada; (2) other than a "limited number of repairs," all of its activities (designing, manufacturing, selling, leasing, repairing, and inspecting rail tank cars) are accomplished at its facilities in Canada; (3) Procor has no facilities whatsoever in the United States; (4) Procor does not, and is not required to, have authorization to conduct business, or maintain a registered agent, in Michigan or any other state; (5) Procor has never consented to jurisdiction in any Michigan courts; (6) Procor has only performed two repairs in Michigan in the last eight years, once in 1993, and once in 1998, and those were limited emergency mobile repairs; (7) Procor does not own real estate, have bank accounts, have a place of business, have any agents, have a telephone listing, maintain warehouse space, or pay income tax, in Michigan; (8) Procor did not anticipate being subject to jurisdiction in Michigan as a consequence of inspecting the rail tank car; (9) other than advertisements in some U.S. general distribution publications, Procor does not conduct any advertising of its railroad cars in Michigan; (10) Procor does not market its rail cars through any sales agent in or for Michigan; (11) Procor has not designed a rail car for anyone in Michigan. (Aff. of David Patterson, attached to Def.'s Brief, ¶¶ 3–19.)

In its supplemental brief, Procor asserts the following: (1) nineteen of the twenty lessees with which Procor has the greatest number of leases, are located in Canada; (2) only one of the top twenty lessees is located in the United States, which is Defendant Union Tank Car (located in Chicago, Illinois); (3) of the lessees whose rail cars traveled through Michigan in 2000, only one (again, Union Tank Car) was not provide a basis for subjecting Procor to Michigan jurisdiction.

a Canadian company; (4) the standard lease agreement Procor uses provides that the cars will comply with, *inter alia,* the laws of the "Canadian federal government having jurisdiction applicable to the cars," that the rail cars are used exclusively in the service of the lessee, and that the governing law to be applied will be Ontario law. (Def.'s Supp. Brief at 2.)

Defendant Procor argues that the exercise of jurisdiction over it, in the circumstances presented, runs afoul of *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), as Procor does not have sufficient minimum contacts with the state, and the suit would violate traditional notions of fair play and substantial justice. Defendant Procor argues that the rail tank cars' movement through Michigan is nothing more than "passive availment," such that Defendant has not purposefully availed itself of acting in Michigan, because Defendant does not control whether the cars travel into or through Michigan.

Defendant Procor asserts that the unilateral activities of others cannot subject a defendant to suit in that jurisdiction, citing *CMS Generation Co. v. Spectrum Technologies, USA, Inc.,* 69 F.Supp.2d 915 (E.D.Mich.1999), *Rohde v. Central Railroad of Ind.,* 930 F.Supp. 1269 (N.D.Ill. 1996), and *Vargas v. Hong Jin Crown Corp.,* 247 Mich.App. 278, 284, 636 N.W.2d 291 (Mich.Ct.App.2001). Procor argues that because its long-term lessees control where the rail tank cars go, not Procor, this cannot be a basis for jurisdiction. Procor also argues that because its rent payments are not by mileage, as Defendant had asserted, this also cannot be a basis for jurisdiction.

Plaintiff CSXT counters Procor's arguments on both factual and legal bases. In

its response to Defendant Procor's motion, Plaintiff asserted that the Court could properly exercise general jurisdiction over Procor based on the following activities:(1) Procor's rail cars travel through the state of Michigan en route (over 2 million miles in 2000, at an average of 5900 miles per day); (2) this travel through Michigan produces revenue for Procor; (3) Procor uses multiple rail carriers and contracts with multiple companies in order to ship products; (4) CSXT has repaired hundreds of Procor's rail cars in Michigan in the past, for which Procor paid CSXT;[4] (5) Procor has repaired 3 rail cars in Michigan.

In its supplemental brief, Plaintiff alleges the following facts: (1) Procor's rail cars traveled through Michigan for 7,735,-238 miles in 2000, and 6,511,061 miles in 2001; (2) seventy-nine of Procor's lessees transported their rail cars in the state of Michigan in 2000; (3) Procor's standard lease does not restrict the lessee from transporting the rail cars through Michigan, although it does restrict them from Hawaii and Alaska; (4) in 2000, 816 of Procor's rail cars were repaired in Michigan, for which Procor, under A.A.R. rules, paid approximately $CDN 150,000; (5) Procor's standard lease agreement provides that Procor retains ownership and the rail car is to be returned to Procor at the end of the lease.

Plaintiff contends that these facts are sufficient to show the necessary contacts for exercise of general personal jurisdiction over Procor—"continuous and systematic contacts with Michigan." Plaintiff contends that Procor has purposefully availed itself of the privilege of acting in the state of Michigan, for the reasons listed above. Plaintiff argues that factors such as convenience, Plaintiff's choice of forum, Michigan's interest in the litigation as the forum state, and not duplicating the litigation in another jurisdiction, all weigh in favor of finding jurisdiction here.

The Court finds that Procor's contacts with Michigan are continuous and systematic. Procor's cars travel on Michigan track aggregating millions of miles per year. This produces significant revenue to Procor for activities occurring in Michigan. Procor's revenue distribution chain operates such that the revenue per rail car channels through Procor on its way to the lessees. Specifically, the dollars are paid directly to Procor, as owner, which thereafter issues payments to the lessees. The monetary value of Procor's business in Michigan is well into the millions of dollars. That Procor's rail cars will travel through Michigan is not only foreseeable, it is a foregone conclusion—seventy-nine of Procor's lessees directed their leased rail cars through the state of Michigan in 2000. Procor does not limit its lessees from having the rail cars travel through Michigan, which it very well could do, since it does limit them from traveling through Hawaii and Alaska. Procor has purposefully availed itself of the privilege of conducting business in the state of Michigan. Contrary to Procor's assertions, the significant amount of travel of Procor-owned rail cars through Michigan is not "fortuitous or random," nor is it simply the unilateral acts of the lessees. Rather, the volume of the travel itself shows that Procor conducts business with the knowledge and intention that part of its general business will be conducted in Michigan.

In addition, the annual amount of rail car repair work done on behalf of Procor in the state of Michigan, billed to and paid by Procor, evidences significant business

4. The rules of the American Association of Railroads ("AAR") allow a railroad to repair a rail car without the consent of the owner, and then charge the owner for the cost of the repair after the fact. Procor has agreed to be bound by the AAR rules.

in the state. Indeed, Procor—not a lessee or other separate entity—paid a substantial sum ($153,468.92) to have 816 of its rail cars repaired in the state of Michigan in the year 2000.

These facts indicate that Procor's contacts with Michigan are of such a volume and quality that they constitute a continuous or systematic part of its general business. Therefore, the Court finds that Plaintiff CSXT has established a prima facie case of minimum contacts, such that this Court may exercise general personal jurisdiction over Procor.

### B. Specific Personal Jurisdiction

■ Michigan provides specific personal jurisdiction over foreign corporations that, *inter alia:* (1) transact business within the state; (2) cause any act to be done, *or consequences to occur,* in Michigan which results in a tort action; or (3) enter into a contract for services to be performed or for materials to be furnished in Michigan. MICH. COMP. LAWS ANN. §§ 600.715(1), (2), and (5), respectively, with emphasis added. The one at issue in this case is (2)—a tort action occurring in Michigan.

Although not binding on this Court, *Fullington v. Union Pacific Fruit Express Co.,* No. 88–2453–S, 1989 WL 21039 (D.Kan. Feb. 1, 1989), is directly analogous to the instant case. In that case, the plaintiff alleged that he was injured when the "interior load barrier doors to a refrigerated rail car" fell on him at his place of employment in Kansas. One of the defendants, Thermo–King, an Arkansas corporation which did not conduct any business within the state of Kansas, had inspected rail cars for Union Pacific Fruit Express Company. Thermo–King objected to personal jurisdiction in Kansas. The court undertook to analyze whether the Kansas long-arm statute and the requirements of due process would allow the exercise of jurisdiction over the out-of-state defendant.

The court found the following facts influential in its decision:

[Thermo–King] inspected rail cars for defendant Union Pacific Fruit Express Company, and was aware that Union Pacific Fruit Express Company provided those rail cars to defendant Union Pacific Railway Company for use throughout its rail system. That rail system runs through the state of Kansas. Since those rail cars necessarily travel through Kansas, it would be reasonable for defendant Thermo–King to anticipate that any negligence on its part in inspecting the rail cars might cause personal injury anywhere within defendant Union Pacific Railroad Company's rail system. It is reasonable and fair to require defendant to conduct its defense here. Therefore, the court concludes that the constitutional requirements for personal jurisdiction have been met in this case.

*Id.* at *2. The court then turned to whether Kansas' long-arm statute was satisfied. Because Thermo–King was being sued for negligence in inspecting the rail car, the court found that this met the "commission of a tortious act within this state" option under Kansas law. The court determined that because injury in Kansas was a foreseeable consequence of a negligently performed inspection, the court could properly exercise jurisdiction over the out-of-state defendant, consistent with the long-arm statute and due process.

In the instant case, as noted above, Defendant Procor has admitted that it inspected the rail car. Plaintiff CSXT asserts that the inspection of the rail car was negligent. If this is proven, then Procor "cause[d] any act to be done, or consequences to occur, in Michigan which results in a tort action" by negligently in-

specting the car. Defendant Procor understands that the rail cars it inspects must travel over a rail system. Defendant Procor is further aware of the parameters of CSXT's rail system. Because Procor inspects rail cars that run through Michigan, it is foreseeable that any negligence on its part in a location of track, in this case quite close to Michigan, during an inspection, might cause injury or damage in Michigan. It is not unreasonable to expect Defendant Procor to defend itself here for the damage which arose out of this specific conduct.

As stated above, the three-part test for determining whether personal jurisdiction may be exercised in compliance with due process is: (1) whether the defendant purposefully availed himself of the privilege of acting in the forum state or causing a consequence in the forum state; (2) whether the cause of action arises from the defendant's activities there; and (3) whether the acts of the defendant or consequences caused by the defendant have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. *See Kerry Steel,* 106 F.3d at 150 (quoting *Southern Mach. Co. v. Mohasco Indus. Inc.,* 401 F.2d 374, 381 (6th Cir.1968)).

In this case, as in *Fullington,* Defendant Procor has purposefully availed itself of causing a consequence within this state (namely, inspecting and/or leasing a rail tank car which it knew or should have known would travel on CSXT's rail system, which includes Michigan). The cause of action arises from this activity. And finally, the damages/injury here have a substantial connection to the inspection such that it is reasonable to exercise jurisdiction over Procor.

Thus, the Court finds *Fullington* persuasive. The Court further finds that it may properly exercise specific personal jurisdiction over Defendant Procor.

## III. CONCLUSION

Procor owns rail cars that travel through the state of Michigan. Procor inspects rail cars that travel through the state of Michigan. Procor pays for repairs of its rail cars that occur in the state of Michigan. In the instant case, Procor, though not the owner of the rail car that traveled in Michigan, had inspected the car.

Procor-owned rail cars generate significant mileage revenues (millions of miles) paid to Procor for travel in Michigan. Repairs in Michigan of Procor-owned rail cars are significant in number and in dollar amount paid by Procor. In addition, Procor inspects rail cars that travel in Michigan, such as the rail car involved in the instant case. Taking into account these factors, the Court concludes that Procor has sufficient contacts with the state of Michigan such that this Court may properly exercise jurisdiction over Procor in the instant case.

## IV. ORDER

For the reasons stated above, Defendant Procor's motion to dismiss for lack of personal jurisdiction is DENIED.

**SO ORDERED.**