# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 06-2634

_____

James Bender; Roy R. Hewitt;      *
Craig Mataczynski; John Noer;      *
David Peterson,      *
    *
    Appellants,      *
    *  Appeal from the United States
    v.      *  District Court for the
    *  District of Minnesota.
Xcel Energy, Inc, in its corporate      *
capacity and as plan sponsor and      *
administrator of the Xcel Energy,      *
Inc. Deferred Compensation Plan,      *
    *
    Appellee.      *

_____

Submitted: January 11, 2007
Filed: October 29, 2007

_____

Before MURPHY, HANSEN, and SMITH, Circuit Judges.

_____

HANSEN, Circuit Judge.

Appellants James Bender, Roy R. Hewitt, Craig Mataczynski, John Noer, and David Peterson (collectively referred to as "Appellants") are former NRG Energy, Inc. (NRG) executives who filed an action under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a), against Xcel Energy, Inc. (Xcel), the

successor of NRG's parent corporation, Northern States Power Company (NSP). The Appellants claimed that Xcel denied benefits due to them under a deferred compensation plan following their terminations from NRG. Appellants Bender and Mataczynski also claimed that they were denied stock benefits owed to them under a separate severance plan. The district court granted summary judgment to Xcel, finding that the deferred compensation claims were discharged in NRG's 2003 bankruptcy proceedings. It further concluded that the Appellants had no cause of action against Xcel under the plan documents. The district court granted summary judgment on Appellants Bender's and Mataczynski's claims because they did not meet the contractual obligations contained in the severance plan that would entitle them to the claimed stock benefits. Appellants appeal, and we affirm.

I.

Prior to June 2000, NRG was the wholly owned subsidiary of NSP, which operated power plants and marketed and sold energy. Each of the Appellants except Bender worked for NSP for several years before going to work for NRG at various times between 1989 and 2000. Bender began his employment directly with NRG in 1994. In June 2000, NRG was spun off in an initial public offering (IPO). In August 2000, NSP merged with New Century Energies, Inc. to form Xcel, the appellee in this case. Xcel retained approximately 74% of the outstanding shares of NRG following the IPO.

NRG expanded rapidly following the IPO, becoming heavily leveraged in the process. Following turmoil in the energy market in 2001 and 2002, NRG experienced serious financial difficulties, and Xcel made a tender offer to repurchase NRG's publicly-held stock in 2002. As part of the tender offer, NRG stock was converted to Xcel stock at a 2-to-1 ratio, and NRG stock options were converted to Xcel stock options. NRG was then merged with a wholly-owned subsidiary of Xcel. Each of the Appellants' employment was terminated in June 2002 following the merger.

There are two types of plans at issue in this case. The first is the NRG Executive Officer and Key Personnel Severance Plan (Severance Plan), which became effective on May 31, 2001. Among other benefits, the Severance Plan provided that stock options granted under the NRG Energy, Inc. Long-term Incentive and Compensation Plan would continue to vest for a period of two years following termination of employment. To receive the benefits provided under the Severance Plan, the participant was "required to provide the Company [NRG] with a release in a form to be provided by the Company." (Appellants' App. at 66-67.) Appellants Bender and Mataczynski objected to the broad release provided by NRG for them to sign, and instead submitted a substitute release that they asserted met all of the release requirements of the Severance Plan.

Following their terminations in June 2002, the Appellants filed a federal complaint on October 3, 2002, against NRG for failure to pay benefits under the Severance Plan. Shortly thereafter on November 22, 2002, Appellants instituted involuntary bankruptcy proceedings in the United States Bankruptcy Court for the District of Minnesota against NRG under Chapter 11 of the Bankruptcy Code. Appellants settled their severance claims with NRG in February 2003, accepting cash payments (totaling some $10 million) in lieu of their claims for severance benefits related to their employment with NRG. The bankruptcy court approved the Settlement Agreement and granted NRG's petition to dismiss the involuntary petition. NRG thereafter filed a voluntary petition for bankruptcy in the United States Bankruptcy Court for the Southern District of New York.

The Settlement Agreement between the Appellants and NRG specifically provided that it did "not in any way alter or affect any contractual obligations arising out of or related to any [Appellant's] employment with any entity other than NRG, or any [Appellant's] participation in any deferred compensation, pension, or other employee benefit plan maintained or sponsored by either" NSP or Xcel. (Appellants' App. at 129.) It further provided that

-3-

> none of the terms of this Agreement in any way constitutes a waiver or compromise of any claims or rights that any of the [Appellants] may have with respect to NSP or Xcel, including but not limited to, claims for deferred compensation, . . . as well as any rights to stock or stock options . . . under any stock plan or grant of stock, maintained by either of those two companies, including NRG stock or options that were previously converted to Xcel Energy, Inc. stock or options . . . .

(Appellants' App. at 132.) It is this exclusion that Appellants Bender and Mataczynski rely on to assert a continuing claim against Xcel for the asserted stock benefits, particularly the two-year posttermination vesting period for stock options.

The second plan is the NSP Deferred Compensation Plan, also referred to as the Top Hat Plan,[1] which was first established in 1980 by NSP. NSP was the original Principal Sponsor of the Top Hat Plan and was replaced by Xcel following NSP's merger with New Century Energies in 2000. The parties disputed which of several versions of the Top Hat Plan covered payment of the Appellants' deferred compensation benefits. The Top Hat Plan was restated in 1992 (the 1992 Restatement). The parties dispute whether a 2000 Statement was a stand-alone plan or whether it was a restatement of the 1992 Restatement. Following the NSP-New Energies merger, several plans, including both the 1992 Restatement and the 2000 Statement (whether a restatement of the 1992 Restatement or not) were merged into a single plan in 2002 (the 2002 Restatement). The 1992 Restatement and the 2002 Restatement both included language that required participants to look only to "the Participating Employer which last employed" them for payment (see id. at 117 & 172), a provision which would have precluded the Appellants, who were all employed

---

[1]"A top hat plan is so called because it provides 'deferred compensation for a select group of management or highly compensated employees,' 29 U.S.C. § 1051(c), without being subject to the Internal Revenue Code's maximum annual benefit and compensation limits." Craig v. Pillsbury Non-Qualified Pension Plan, 458 F.3d 748, 749 (8th Cir. 2006).

by NRG at the time of their terminations, from seeking deferred compensation benefits from Xcel under the Top Hat Plans. The 2000 Statement did not contain the quoted language, but other language in the 2000 Statement led to a dispute between the parties about whether, if covered by the 2000 Statement, the Appellants were similarly limited to looking only to the assets of NRG, their former employer, for payment under the plan. The retroactivity of the 2002 Restatement, which was enacted in January 2003 but claimed an effective date of January 1, 2002, further clouded the issue of which plan covered the Appellants' claims for deferred compensation benefits.

During the time Appellants were negotiating the involuntary bankruptcy settlement of their severance benefits with NRG, Appellants sought their deferred compensation benefits under the Top Hat Plan from Xcel as the plan administrator. After NRG filed its voluntary bankruptcy petition in New York, in letters dated June 13, 2003, Xcel denied in part each of the Appellants' demands for deferred compensation benefits, asserting that Xcel had verified with both its accounting office and NRG's accounting office that the obligation to pay deferred compensation benefits had been transferred to NRG pursuant to Section 2 of the 1992 Restatement or Section 5.9 of the 2002 Restatement at the time each Appellant transferred his employment from Xcel's predecessor to NRG. (Appellants' App. at 153-68.) Xcel further determined that both the 1992 Restatement and the 2002 Restatement required Plan beneficiaries to seek benefits solely from their last employer, NRG. Xcel acknowledged, however, for each of the Appellants, except Bender (who never worked for NSP), that it had previously communicated to the Appellants that it had an obligation based on the Appellants' prior employment with NSP, and that it would honor the obligation and pay certain amounts directly to the Appellants. Thus, Xcel, as Plan Administrator, approved the claims in part in an amount that Xcel itself had previously determined to be based on the Appellants' deferred compensation account balances at the time each Appellant transferred employment to NRG. Appellants sought administrative review of the denial, which was affirmed by the review

committee.[2] Throughout the administrative claim process, the parties referred to and quoted portions of the 1992 Restatement and the 2002 Restatement. None of the Appellants sought benefits pursuant to the 2000 Statement.

Meanwhile, NRG filed a joint plan of reorganization in the New York bankruptcy proceeding, which included a proposed settlement between NRG and Xcel referred to as the Employee Matters Agreement. That Agreement collectively referred to the Xcel Energy Inc. Nonqualified Deferred Compensation Plan (the 2002 Restatement) and the Xcel Energy Inc. Nonqualified Pension Plan (a plan not at issue here) as the NQRPs, and allocated to Xcel the obligations owed to NRG employees as of the date of the settlement (December 5, 2003) that were legally allocable to Xcel by virtue of the employees' prior service with Xcel or NSP. The Employee Matters Agreement referred to this allocated portion as the Xcel NQRP Amount, and it specifically provided that "[t]o the extent Xcel has not previously satisfied such obligation, Xcel will maintain responsibility for payment of the Xcel NQRP Amount." (Appellants' App. at 274.)

After the review committee denied the Appellants' claims for deferred compensation benefits, the Appellants brought this federal action against Xcel, both in its corporate capacity and as plan sponsor and administrator of the Xcel Energy, Inc. Deferred Compensation Plan, seeking deferred compensation benefits. Bender and Mataczynski also sought redress for Xcel's denial of stock options, to which they claimed entitlement based on the extended two-year vesting period contained in the Severance Plan. In the initial stages of the litigation, the parties referred to the 1992, 2000, and 2002 Plans as all restatements of the original Top Hat Plan. On Xcel's

---

[2]The review committee asserted that the partially approved amounts were an offer made by Xcel as plan sponsor, not by the review committee, to settle the claims. (Appellants' App. at 248, 251, 254, and 257.) Although it is unclear from the record, it appears that Xcel did not pay these partially approved amounts to any of the Appellants, apparently because the Appellants refused the offer to settle.

-6-

motion for summary judgment, the district court initially determined that a fact dispute existed both concerning whether the Appellants were covered by the 2000 Statement, potentially making Xcel liable, and whether the 2002 Restatement applied retroactively to the Appellants, thereby excluding Xcel from liability. The district court denied Xcel's motion for summary judgment on this point. The district court granted summary judgment to Xcel on Bender's and Mataczynski's claims related to stock options premised on the Severance Plan because they each had failed to provide the release required by the Severance Plan to be entitled to the two-year vesting period.[3]

After further discovery, the parties filed a second round of cross-motions for summary judgment. Xcel raised for the first time the notion that the 2000 Statement was a stand-alone plan that did not provide coverage to the Appellants, none of whom were employed by NSP or Xcel during the relevant period. The district court agreed. The district court also concluded that the undisputed evidence established that upon each Appellant's transfer of employment to NRG, NSP had made book entries, supported by cash payments, transferring NSP's liability for the Appellants' deferred compensation to NRG. Thus, the Appellants' Settlement Agreement and release of claims with NRG in the involuntary Minnesota bankruptcy proceedings satisfied their entitlement to deferred compensation from Xcel, because at that time any deferred compensation obligation was NRG's alone.

Appellants appeal, arguing that their claims for deferred compensation were not settled out in the NRG involuntary bankruptcy proceeding and that Xcel, as plan administrator, erred in retroactively applying the 2002 Restatement and denying their claims, which the Appellants argue are governed by the 2000 Statement. Appellants

---

[3]The district court also granted summary judgment to Xcel on the Appellants' claims that Xcel interfered with the Appellants' exercise of their ERISA rights by denying their benefits and by discharging them in violation of § 510 of ERISA, 29 U.S.C. § 1140. The Appellants do not appeal these rulings.

Bender and Mataczynski also appeal the district court's grant of summary judgment on their claims for stock options premised on the extended vesting period contained in the Severance Plan.

## II.

We review the district court's grant of summary judgment *de novo*, applying the same standard used by the district court and viewing the evidence in the light most favorable to the Appellants as the nonmoving parties. See Pralutsky v. Metro. Life Ins. Co., 435 F.3d 833, 838 (8th Cir.), cert. denied, 127 S. Ct. 264 (2006). Appellants brought this civil action under § 502 of ERISA to recover benefits allegedly due under an ERISA-qualifying plan. See 29 U.S.C. § 1132(a)(1)(B). While we generally give deference to plan administrators that are granted discretionary authority under the applicable plan, see Pralutsky, 435 F.3d at 837, we recently explained that the same deference is not owed to administrators of top hat plans. See Craig, 458 F.3d at 752 ("'[T]op hat plans should be treated as unilateral contracts' and reviewed 'in accordance with ordinary contract principles' because the policy considerations relied upon in Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989), to trigger abuse-of-discretion review . . . are simply not present in the case of a top hat plan." (quoting Goldstein v. Johnson & Johnson, 251 F.3d 433, 443 (3d Cir. 2001))).

Although we review the interpretation of a contract *de novo*, we note that each of the plans gives the administrator discretionary authority to interpret the plan. We construe that term as we do any other contract term and give effect to its meaning. "Ordinary contract principles require that, where one party is granted discretion under the terms of the contract, that discretion must be exercised in good faith-a requirement that includes the duty to exercise the discretion reasonably." Id. (internal marks omitted). We therefore review for reasonableness, a deferential standard, Xcel's determination that the Appellants could seek deferred compensation benefits only from NRG under either the 1992 Restatement or the 2002 Restatement.

A.    Deferred Compensation under the Top Hat Plans

The district court concluded that Xcel, as plan administrator, appropriately denied deferred compensation benefits to the Appellants because the clear language of each of the plans revealed that the Appellants' benefits were covered by either the 1992 Restatement or the 2002 Restatement, both of which required the Appellants to seek benefits solely from their last employer, NRG.  (See Appellants' App. at 172, 1992 Restatement § 2 ("Payments shall be made only by the Participating Employer which last employed the Participant before payments commence."); id. at 117, 2002 Restatement, § 5.9 ("Payment of distributions from this Plan shall be made only by the Employer which last employed the Participant before payments commence.").) Appellants succinctly define "[t]he only issue [as] whether the 2000 Statement was a stand-alone plan or one of a series of amendments to the underlying Plan." (Appellants' Br. at 26.)

In arguing that the 2000 Statement was an amendment to the original Top Hat Plan, the Appellants rely heavily–nearly exclusively–on admissions made by Xcel in response to Plaintiffs' Requests for Admissions under Federal Rule of Civil Procedure 36.  During discovery, Xcel forwarded a copy of the 2000 Statement to Appellants along with the other plans in response to a  request for documents.  Prior to this time, the 2000 Statement had not been at issue; in fact, the Appellants' alleged rights to recover under its terms was never raised in the administrative proceedings.  In its Responses to Plaintiffs' Request for Admissions No. 10, which asked Xcel to "[a]dmit the 2002 Restatement signed on January 6, 2003, amended the 2000 Statement" (Appellants' App. at 261), Xcel "object[ed] to this Request because the 2002 Restatement amended the Top Hat Plan which was created in the 1980s, of which the 2000 Statement was one of a series of amendments to the underlying plan" (id.). Subject to that objection, Xcel admitted that the 2002 Restatement amended the 2000 Statement.  In other admissions, Xcel admitted the content of various sections of the 2000 Statement to the extent that the Request for Admissions quoted directly from the

plan language, but continually denied any request that sought to establish the 2000 Statement as applicable to the Appellants, asserting instead that the Appellants' claims were covered by the 2002 Restatement. Xcel did not assert that the 2000 Statement was a stand-alone plan until after the district court denied its first motion for summary judgment. That the 2000 Statement was a stand-alone plan formed the basis for Xcel's subsequent motion for summary judgment, which the district court granted.

We agree with the Appellants that as a general rule, admissions made in response to a Rule 36 request for admissions are binding on that party. See Fed. R. Civ. P. 36(b) ("Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission."). Following the district court's first denial of summary judgment on the deferred compensation claim, Xcel submitted the affidavit of Parker Newcomb, III, a Senior Attorney for NSP in 2000 when the 2000 Statement was created, and later its Vice President of Total Compensation and Human Resource Operations, who left Xcel in 2004. Newcomb stated in his affidavit that the 2000 Statement was a newly created plan, that it was not a restatement of the 1992 Restatement, and that none of the Appellants was covered by the 2000 Statement because they were not employed by NSP when it was created.

While self-serving subsequent affidavits that conflict with a prior Rule 36 admission may not warrant setting aside the admission, the district court did not rely only on Newcomb's subsequent affidavit filed by Xcel. Rather, the court looked to the language of the 2000 Statement itself as well as language from the 2002 Restatement, which recounted the history of the relevant deferred compensation plans. Rule 36 allows a party to withdraw or amend an admission "when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice [him]." Fed. R. Civ. P. 36(b); see also Beatty v. United States, 983 F.2d 908, 909 (8th Cir. 1993) (allowing a late amendment and noting that the plaintiff was not prejudiced

by the amended admission; rather "he [wa]s prejudiced by the true facts contained in the [late] response"). The district court did not err in considering the plain language of the documents to supercede the admission made by Xcel. See F.D.I.C. v. Prusia, 18 F.3d 637, 641 (8th Cir. 1994) ("Permitting the amendment of responses to a request for admissions is in the interests of justice if the record demonstrates that the 'admitted' facts are contrary to the actual facts."); Kerry Steel, Inc. v. Paragon Indus., Inc., 106 F.3d 147, 153-54 (6th Cir. 1997) (affirming district court that deemed counsel's argument to be a request to withdraw a prior admission).

We turn then to the language of the plans to assess whether the district court properly concluded that the Appellants were not participants in the 2000 Statement and therefore could not maintain their action against Xcel for deferred compensation benefits. If the 2000 Statement does not apply to the Appellants, they must comply with either the 1992 Restatement or the 2002 Restatement to recover their deferred compensation benefits, both of which require the Appellants to look only to their last employer, NRG, for payments.

We agree with the district court that the 2000 Statement was a separate plan from the 1992 Restatement, and the only evidence in the record reveals that the Appellants were participants in the 1992 Restatement, but not in the 2000 Statement. The 2000 Statement is titled "NSP Nonqualified Deferred Compensation Plan," and states that it is "First Effective January 1, 2000." (Appellants' App. at 79.) It further provides that

> [e]ffective January 1, 2000, Northern States Power Company . . . (hereinafter sometimes referred to as "Principal Sponsor") hereby creates a nonqualified, unfunded, elective deferral plan for the purposes of allowing a select group of management and highly compensated employees of the Principal Sponsor and other Employers to defer the receipt of compensation which would otherwise be paid to those employees.

(Id. at 83 (emphasis added).)

-11-

In 2002, following the merger of NSP and New Century Energies, Xcel restated the 2000 Statement and merged several top hat plans into it. The 2002 Plan is titled "Xcel Energy Inc. Nonqualified Deferred Compensation Plan (2002 Restatement)" (id. at 102) and explains in its Purpose section that NSP and New Century Energies, Inc. had each established nonqualified deferred compensation plans and that the two companies had merged as of August 2000 to become Xcel. It further explains that in addition to the NSP Deferred Compensation Plan, which was restated as amended through January 1, 1992, and referred to as the NSP 1992 Plan, "[e]ffective January 1, 2000, NSP established <u>this Plan</u>, the NSP Nonqualified Deferred Compensation Plan (2000 Statement)." (<u>Id.</u> (emphasis added).) It further explained that "[e]ffective January 1, 2002, this restatement of the NSP Nonqualified Deferred Compensation Plan was adopted and the name of the Plan was changed to the 'Xcel Nonqualified Deferred Compensation Plan,' effective as to amounts credited to Accounts on and after January 1, 2002." (<u>Id.</u>) Finally, the 2002 Restatement provided that "as of such date [January 1, 2002] or such subsequent date as the Committee may select" the Committee would cause to be transferred all benefits previously credited to Participant accounts under the New Century Energies, Inc. Plans and "the NSP 1992 Plan (the 'Regular Deferred Compensation Account')," "to this Plan" and that the transferred benefits "shall become part of and payable pursuant to the terms of this Plan." (<u>Id.</u>)

It is clear from a review of all of the documentary evidence that there existed two separate NSP plans that were eventually merged together in 2002. NSP sponsored the "NSP Deferred Compensation Plan" beginning in 1980, which was restated in 1992. There is no dispute that each of the Appellants participated in the 1992 Restatement. In 2000, NSP created a new plan with a different title–the "NSP Nonqualified Deferred Compensation Plan." There is no evidence that any of the Appellants participated in this new 2000 plan, which required that an individual be designated as eligible to participate by the plan committee and complete a Plan Enrollment Form before becoming a participant. (<u>Id.</u> at 86, 2000 Statement § 2.1.)

-12-

The only record evidence addressing the Appellants' plan participation in 2000 reveals that they participated in the "NSP Deferred Compensation Plan," referred to as the 1992 Restatement. Ultimately, the 2000 Statement was restated in 2003, made retroactive to January 1, 2002, and the 1992 Restatement was merged into that plan at that time.

The Appellants were participants in the 1992 Restatement, which was merged into the 2002 Restatement. Although there may be a dispute about whether the 2002 Restatement could be applied to the Appellants because it did not come into existence until after their terminations, the 1992 Restatement and the 2002 Restatement both leave the Appellants in the same place–with no cause of action against Xcel. Appellants' argument that the broad definition of "Employer" in the 2002 Restatement includes Xcel ignores the qualifying language that payment be made by the "Employer which last employed the Participant before payments commence." (Id. at 117, 2002 Restatement, § 5.9 (emphasis added); see also id. at 172, 1992 Restatement § 2 (using identical language).) There is no dispute that the Appellants were each last employed by NRG, a separate entity from Xcel, before payments were to commence. We understand the Appellants' frustration with Xcel's changing posture during this litigation, but the documents are clear on their face that Appellants were never participants of the 2000 Statement merely by being participants in the 1992 Restatement. The documents speak for themselves. It is also clear to us that both parties changed positions. Appellants did not rely on the 2000 Statement until discovery began in this litigation, originally asserting their claims under the 1992 Restatement and the 2002 Restatement, as attached to their district court complaint. Based upon the plain language of all of the plan documents, Xcel reasonably determined that the Appellants could seek deferred compensation benefits only from NRG.

B.    Discharge in Bankruptcy

The district court also concluded that the Appellants' claims for deferred compensation were discharged in NRG's voluntary bankruptcy proceedings because NSP transferred to NRG NSP's obligation related to Appellants' deferred compensation for the time each of them worked for NSP, such that the Employee Matters Agreement between NRG and Xcel did not exempt the claims from the discharge.  Having determined that the Appellants have no cause of action against Xcel for deferred compensation under the relevant plans, we need not address whether these claims were discharged in NRG's bankruptcy.

C.    Stock Benefits Under the Severance Agreement

Appellants Bender and Mataczynski[4] challenge the district court's conclusion that the releases they provided for purposes of participating in the Severance Plan did not satisfy their obligations under that plan.  Appellants claim that the release provided by the company under the Severance Plan that they were required to sign was much broader than what they term a "standard release of claims" because it included a confidentiality agreement, a noncompete agreement, a return of property agreement, a nondisparagement agreement, and an agreement as to injunctive relief.  Appellants also assert that the substitute release that they provided included everything required by the Severance Plan for a valid release.

An employer may validly condition the payment of severance benefits on the employee's agreement to release the employer from any and all claims.  See Lockheed Corp. v. Spink, 517 U.S. 882, 893-94 (1996) (explaining that requiring an employee

_____

[4]References to "Appellants" in this subsection II.C. refer only to Appellants Bender and Mataczynski.

to waive employment-related claims is a permissible *quid pro quo* in exchange for the employer's promise to provide increased benefits, such as provided in a severance plan); Petersen v. E.F. Johnson Co., 366 F.3d 676, 680 (8th Cir. 2004) (upholding an employer's requirement that a participant must release claims under an old plan before he is entitled to benefits under a new plan). The plain language of the plan required the participants "to provide the Company with a release in a form to be provided by the Company." (Appellants' App. at 66-67.) This condition clearly was not met. Further, the substitute release provided by the Appellants omitted an explicit element required of the release. The substitute release limited its coverage to known claims by providing that it covered claims arising out of actions "occurring to the date of the execution of this Release of which the Participant is or has been made aware or has been reasonably put on notice." (Id. at 76.) The Severance Plan required that unknown claims be included in the release by covering claims "whether or not any such claim is known at the time of separation." (Id. at 67.) Appellants' substitute release did not meet the conditions of the Severance Plan, and the district court did not err in granting summary judgment to Xcel on Appellants Bender's and Mataczynski's claims for stock benefits.

## III.

The judgment of the district court granting summary judgment to Xcel on all claims is affirmed.

_____